## BOLTON vs. BRANCH.

To an action for the purchase money of a tract of land, the vendee cannot set up in bar apprehended difficulties in the title of the vendor, or require the exhibition of an abstract. If defects exist in the title they must be specifically pointed out in pleading, and must be of substantial and existing quality.

If the defence of outstanding title be interposed, the title must be specified, and alleged and proven to be paramount to that contracted to be conveyed.

*Appeal from Desha Circuit Court in Chancery.*

Hon. JOHN C. MURRAY, Circuit Judge.

YELL, for the appellant.

GARLAND for the appellee.

Mr. Justice FAIRCHILD delivered the opinion of the court.

On the 10th of January, 1854, Isaac L. Bolton sold to James H. Branch, the plantation in Desha county, known as the old Bellville place, on which Branch was then residing under license from Sexton, from whom Bolton bought the place, the preceding September. So much of the purchase money being unpaid, Branch executed his two bonds, each providing for the payment, to Bolton, of three thousand six hundred and sixty-six 66-100 dollars, and due respectively in one and two years. Bolton, at the same time, executed his title bond, which was evidently a covenant to convey the lands sold to Branch, mutual with, and dependent upon the agreement of Branch to pay the two bonds, that represented the unpaid part of the purchase money.

This we take to be the plain meaning of the bond, for although the last bond was not due till the 10th of January, 1856, and the bond for the title was to convey the lands upon the first of January, 1856, yet the recital in the title bond is that this was to be done only upon payment of the last bond.

The two bonds of Branch to Bolton being unpaid, on the 17th of March, 1856, Bolton filed the bill that was the beginning of this suit, in which he alleges the foregoing facts, a tender of such deed as he understands he is liable for, the non-payment of the bonds, the mortgage of the lands to sundry other persons by Branch, that Branch intends and is attempting to defraud him out of what is due to him on the lands; and he asks for the enforcement of his lien upon the land, by its being sold under the direction of the court, that he, Bolton, may realize from the sale what is due to him. At the April term, 1856, of the Circuit Court of Desha county, Branch answered the bill, and made his answer a cross-bill; and also made Washington Bolton a party thereto, on the ground that the bond first due had been assigned to him, and that he had obtained judgment thereon, and would urge its satisfaction by execution.

As the agreement between the parties was reduced to writing, and is shown by the bond for title, to that alone must we

look to ascertain the obligations which Bolton took upon himself, unless Branch had wished and claimed that the contract should be rescinded for fraud used by Bolton to procure its execution. This Branch does not desire, unless it should turn out upon investigation of Bolton's title, that it is worthless, when he will be willing that Bolton should take back his lands, and refund to Branch the amount of the purchase money that was paid. To this suggestion, if it were an unconditional one, Bolton expressed an eagerness to assent.

Both because the obligations of the parties are to be gathered from their written agreements, and because Branch appears to have been resident upon the old Bellville place, when Bolton bought it, and continued to hold it until his own purchase of it from Bolton, who was himself a non-resident of the State, must the verbal assurances that Branch charged upon Bolton respecting the title to the lands be taken as immaterial to the merits of this controversy.

This is not a bill, on the part of Bolton, for a specific performance, and so far as the case may be considered as such on the cross-bill of Branch, Bolton expressly offers to give such title, as by his bond he undertook to make, and has brought into court, a deed to the lands, with covenants of general warranty, to be transferred to Branch upon payment by him of the purchase money. The proceeding of Bolton is simply to hold the land liable for the amount due upon it. He is not asking that Branch should specifically perform the agreement, but that he is keeping the land, and will not pay for it, and he offers, either to make such deed as he understands he is obliged to make upon payment of what Branch owes, or to take back the land, and pay to Branch, with interest, what has been paid on the land.

If Bolton had conveyed the lands to Branch by deed, the latter could not resist payment of the purchase money on the grounds of anticipated difficulties in the title, which may hereafter be the subject of a suit. *Worthington vs. Curd*, decided at the present term. And surely a man that has only a bond

for title, cannot be in a better condition in this suit for alleging defects in a title than one who holds under a deed. Instead of having a deed with covenants of general warranty, he has a right of action to such deed, upon his own performance of what is contained in the bond for title, which, in this case, is payment of the purchase money.

To an action for the purchase money, the vendee cannot set up apprehended difficulties in the title of the vendor, cannot call upon him to show an abstract of title. If there are defects in the title, he must specify them and prove them, and they must be substantial and existing defects, not imaginary, or apprehended or rumored difficulties. *Harris vs. Bolton* 7 *How.* (*Miss.*) 171 ; *Glascock vs. Robinson* 13 *S. & M.* 87 ; *Ralston vs. Miller* 3 *Rand.* 49 ; *Crawford vs. Murphy* 22 *Penn. State R.* 87, 88.

If the vendee would defend because of an outstanding title. a general expression that there may be, or that there is an outstanding title is not enough. He must show what it is, that it is paramount to that of the vendor, must both allege and prove the fact. *Tarpley vs. Poage* 2 *Texas* 148 ; *Perry vs. Rice* 10 *Texas* 373.

Some of the cases cited are where deeds had been given, but some are where the contracts were executory, as in this case.

We cannot see that this case falls within *Ludwick vs. Hunt-zenger*, 5 W. & S. 59, where after laying down the doctrine, here announced, in strong terms, it states that while the contract for the purchase of the lands remains *in fieri* and the action is brought on the contract with a view to enforce the payment of the purchase money, the vendee will not be held bound to pay, if it should appear that the title of the vendor is anywise doubtful. Here the title of Bolton is not shown to be anywise doubtful. The only difficulty to his making perfect title, is cleared away, by obtaining a decree for title against the widow and heirs of Sexton, who had died before he had made, or was to make title to Bolton, under his purchase. The claims of Elizabeth Hughes, and of the widow and heirs of Hugh C.

Hinton, mentioned in the answer and cross-bill of Branch, are not so alleged as to require Bolton, or to have authorized the court below, to have taken notice of them; they were not proven, were denied by Bolton. They are not worthy of any consideration in the case. Even in *Ludwick vs. Huntzenger*, the title of the vendor must be made to appear to be doubtful, and under the principle of the cases cited, that must be made to appear by the vendee. Besides, it must be remembered that, in Pennsylvania, such a case as that cited was like a case of specific performance elsewhere, as is also an action in Texas for payment of the purchase money, though the trial in those States must be upon different averments. And even in a suit for specific performance, a purchaser, though entitled to a title that is not doubtful, cannot object to a title, because possibly it may be bad. *Laurens vs. Laurens* 6 *Rich. Eq. R.* 222. Each party in this case seems to have been in default, in different stages of the controversy. As Branch did not make the payment as he should have done, according to his contract, and resisted through all the courts, the collection by Washington Bolton of the first of the bonds that fell due. This conduct was held to be illegal by this court, and was vexatious. And when the last note became due, Branch did not tender the money and demand a title, but excuses himself by necessary absence from the State, alleging however that in March 1856, he met Bolton in Memphis and was then ready to pay the money and receive the deed, but that Bolton demanded more interest of him, than he was entitled to have, according to the face of the bonds. So Bolton, who ought to have been ready at all times to receive the money and make his deed, pleads his absence from the State, as a non-resident, and as not expecting that Branch would pay, from his previous default, when at the April term, 1856, of the Desha Circuit Court, Branch tendered to his counsel and agent the money that was due to him and demanded a deed. Though the demand of a deed by Branch was subject to the same objection as his cross-bill, in asking more than Bolton was required to perform.

Bolton also is complained of for prosecuting different and concurrent remedies, having, upon the same day that this suit was begun, commenced an action of ejectment for the lands This he had a right to do, although it shows an exacting disposition to prosecute different suits tending to the same result, and both independent of the personal responsibility of Branch.

Yet in the attitude of the case as it finally was in the court below, Bolton was not only ready to give title but brought into court for Branch such deed as the latter was obliged to accept; while Branch expresses anxiety to pay the money when he can obtain such deed as he ought to have.

The Circuit Court of Desha county sitting in chancery ought to have required Branch to pay the amount due upon the two bonds at the time of the hearing of the cause, including interest to the time, and costs incurred upon the judgment of Washington Bolton, to accept Bolton's deed, and to have rendered such decree as to costs, as appeared to it to be equitable.

For not doing so, its decree is reversed; the case is remanded with instructions that Branch pay the money and receive the deed as above directed; or that if he shall not do so, within the time specified by the court, that the contract of sale be rescinded, that Branch give up the lands to Bolton, that Bolton cause Branch to be released from the judgment of Washington Bolton, on the bond first due, surrender to him the bond last due, and pay to him the amount he paid upon the lands, with interest from the time of payment, and that there be no account of rents and improvements between the parties. Each party is to pay half the costs of this case in the court below, and in this court.

And this is to be the end of the whole controversy touching the lands, the injunction being perpetuated as to the judgment of Washington Bolton, the ejectment suit, and any suit upon the bond last due.

There are many other allegations in the record that might be noticed, but nothing that we consider essential to determine the rights of the parties. It certainly ought not to be expected that

we should notice, except for the purpose of reprehension, the charges of insolvency, oppression, deceit and fraud, with which the parties have burdened the record, by their mutual criminations and recriminations, all of which are denied, none of which is attempted to be proved.