## LONE ROCK BANK *v.* PIPKIN.

### Opinion delivered October 12, 1925.

1. VENDOR AND PURCHASER—RELIANCE ON REPRESENTATIONS OF VENDOR'S AGENT.—A purchaser has no right to rely upon representations of the vendor's agent as to the price which the vendor had put upon the land, when the property is open to observation, and he has viewed the same, and must rely upon his own judgment to determine whether the property is of the value represented and whether he is willing to pay that price.

2. FRAUD—OPPORTUNITY OF INFORMATION.—If the means of information as to the subject of a representation is equally accessible to both parties, they will be presumed to have informed themselves; and, if they have not done so, they must abide the consequence of their own carelessness.

3. VENDOR AND PURCHASER—CONTRACT OF PURCHASE—MARKETABLE TITLE.—A contract for the purchase of land which calls for a title to be pronounced good by the purchaser's attorney contemplates a marketable title, and the purchaser would not be bound if the title was not marketable, even though his attorney examined the abstract of title and pronounced it good.

4. VENDOR AND PURCHASER—CONTRACT OF PURCHASE—BURDEN OF PROOF.—A purchaser of land resisting specific performance of his contract upon the ground that the title is defective has the burden of proving the specific defects complained of.

Appeal from Randolph Chancery Court; *Lyman F. Reeder,* Chancellor; reversed.

*Schoonover & Jackson,* for appellant.

*George G. Dent,* for appellee.

WOOD, J. This action was instituted by the Lone Rock Bank, hereafter called Bank, against E. H. Pipkin and wife to foreclose a mortgage executed by Pipkin and

LONE ROCK BANK *v*. PIPKIN.

wife to Decker & Reed on 225 acres of land in Randolph
County, Arkansas. It was alleged that Decker & Reed
transferred the notes for value before maturity to the
bank. Decker & Reed were made parties defendant.
It was alleged that there was a misdescription of the land
in the mortgage. The bank prayed judgment against
the defendants and for a reformation of the mortgage
and a foreclosure of the same to satisfy the judgment.
Decker & Reed did not answer. Pipkin and wife
answered denying the material allegations of the com-
plaint, and set up by way of cross-complaint that Decker
& Reed had the land for sale as the agent of one Charles
Sellers, and that they fraudulently represented that
Sellers had fixed the price of the land at the sum of
$3,000, whereas Sellers had fixed the price to them at
$2,500; that Decker & Reed further fraudulently
represented that the title to the lands was perfect, and
that, relying upon these representations, they purchased
the land for $3,000 and deposited in escrow the sum of
$700, which was to be paid to the bank if perfect title
to the lands as shown by the abstract was furnished;
if not, the deposit was to be withdrawn. They alleged
that it was understood between Pipkin and wife and
Decker & Reed that there was to be a perfect title to the
land, free from any and all incumbrances, and that
before the deal was to be consummated the title was to
be perfected according to the opinion of E. G. Schoon-
over, an attorney employed by them to examine and pass
upon the title; that they purchased the land in reliance
upon the representations made by Decker & Reed as to
the price and title, and that such representations were
false. They tendered a deed to Decker & Reed, conveying
to them title to the lands which Decker & Reed refused.
Pipkin and wife prayed in their cross-complaint that
the sale be set aside for fraud and misrepresentation
and concealment; that the purchase money notes exe-
cuted by them for the land be returned to them, and that
they have judgment against Decker & Reed for $700,
which was paid to them by the bank.

Decker & Reed did not answer the cross-complaint, but a stipulation was filed to the effect that it should be considered by the court that they had answered denying all the material allegations prejudicial to their interests. It was also stipulated by the parties that the complaint should be treated as amended so as to ask for judgment on the purchase money note that had matured since the filing of the original action, and that, in case of a decree in favor of the bank, the amount of such decree would be for the unpaid notes and for a foreclosure of the mortgage. It was also stipulated that all material allegations of the cross-complaint were denied by the bank.

It will be observed from the pleadings that the Pipkins are resisting the bank's action for judgment and foreclosure mainly on two grounds: First, that fraud was practiced upon them by Reed of Decker & Reed, in that he represented that the Sellers farm had been listed with Decker & Reed by Sellers, the owner, to be sold for the sum of $3,000; that Reed represented that Sellers wanted $3,500 for it, and that Decker & Reed had made him come down $500; that, if the Pipkins were not interested in the land at that price, it would not be worth his time and trouble to view the land; that he was acting as Sellers' agent, and that the land had been listed with Decker & Reed by Sellers for that sum; that he ascertained after the contract was entered into with Reed that the land was listed by Sellers with Decker & Reed in the sum of $2,500; that he had no notice of such fact, but relied largely upon the representations of Reed.

We do not find in the cross-complaint of the Pipkins any allegation to the effect that the land was of less value than the sum they agreed to pay for same. Nor is there anything in Pipkin's testimony, as abstracted, to show that the land was of less value than what he agreed to pay for same. The effect of Pipkin's allegation and proof to sustain the same is that Reed, as the agent of Sellers, had sold him the land for $3,000 by falsely representing that that was the lowest price placed on the

land by Sellers, whereas the truth was that Sellers had sold the land to Decker & Reed for about $1800. Pipkin had no right to rely upon these false representations of Reed as to the price which the owner and seller had put upon the lands. A purchaser has no right to rely upon such representations of an agent when the property is open to observation, and especially after he has viewed the same and in the last analysis must rely upon his own judgment to determine whether the property is of the value represented, and whether he is willing to pay that price. The purchaser, under such circumstances, cannot claim that he was misled and relied upon the false representation as to the price and was induced thereby to make the purchase. Since Pipkin had an opportunity to view and did view the land before his purchase, and since he does not claim that he was in any manner deceived by Reed as to the nature and character of the land and the true value thereof and does not pretend in his pleadings or proof that the land was of less value than the sum he paid, he is in no attitude to set up that he was induced by the fraudulent representations of Reed concerning the owner's price to enter into the contract of purchase. He is in no attitude to claim that he was injured by such false representations because he was dealing with Reed at arms' length and had to act entirely on his own judgment in determining whether he was willing to pay the price named by Reed in making the purchase. The means of information as to the value of the land was as accessible to Pipkin as it was to Reed. The facts of this record bring the case well within the doctrine of the many cases of this court to the effect that, "if the means of information are equally accessible to both parties, they will be presumed to have informed themselves, and, if they have not done so, they must abide by consequences of their own carelessness." *Delaney* v. *Jackson,* 95 Ark. 131 and cases there cited. In the case of *Darnell* v. *Bibb,* 143 Ark. 580, at page 592, we quoted the following from *Cardwell* v. *Dennis,* 101 Ark. 608, which is exceedingly apposite here: "A misrepre-

sentation, in order to affect the validity of a contract, must relate to some matter of inducement to the making of the contract, in which, from the relative position of the parties and their means of information, the one must necessarily be presumed to contract upon the faith and trust which he reposes in the representations of the subject of the contract. For, if the means of information are alike accessible to both, so that with ordinary prudence and diligence the parties might respectively rely upon their own judgment, they must be presumed to have done so. Or, if they have not so informed themselves, must abide by the consequences of their own inattention and carelessness."

2. The appellees further contend that under their contract for the purchase of the land, before the deal was fully consummated and the lands paid for, the title to such lands was to be either perfect or perfected according to the opinion of E. G. Schoonover, an attorney at law employed by them to examine and pass upon the title to the same. The contract under which the Pipkins purchased, among other things, provided that "when Decker & Reed gets the abstract and deed, and turns over to the Lone Rock Bank, then the Lone Rock Bank is to turn over the money, which is $700, and the land notes, to Decker & Reed. It is also understood that the Lone Rock Bank is to have the abstract examined, and, when passed as good by attorney Schoonover, then the $700 and land notes is to be turned over to Decker & Reed and E. H. Pipkin is to pay the attorney's fee."

Pipkin testified that the title was not perfected in accordance with the attorney's opinion; that the opinion of the attorney pointed out certain defects which had never been corrected. It appears that the bank, through its cashier, Duvall, had the abstract examined by attorney Schoonover and he writes concerning it, among other things, as follows: "I have gone through this title carefully, and, while there seems to be some irregularities, I don't regard them as being serious enough to affect the marketability of the title. In my judgment,

the fee title to the 225 acres of land is vested in L. P. Reed, subject to the deed of trust held by the Perkins.''

It is recited in the contract for the purchase mentioned above as follows: ''Now it is understood that E. H. Pipkin is to assume an $1100 loan now on the farm, and it is also understood that Decker & Reed is to get E. H. Pipkin an abstract and a warranty deed showing the land to be clear except for the $1100 loan, etc.'' Attorney Schoonover, in his letter to Duvall, after stating that in his judgment the title was in Reed subject to the deed of trust held by the Perkins, further suggested what the irregularities were to which he referred as not being serious enough to affect the marketability of the title, and in his testimony, after reciting what had been done to correct these irregularities, he testifies, ''In my judgment this abstract of title meets the requirements of this contract, and what I said in my letter in regard to the matter just suggests that certain things might be done.'' And he further testifies that, according to the written contract between the Pipkins and Decker & Reed, the abstract shows the land to be clear except for the $1100 loan against it.

We deem it unnecessary to set out and discuss in detail the testimony of Schoonover and others showing the steps that were taken to conform to the suggestions of Schoonover in his letter to Duvall concerning the title. Suffice it to say, we are convinced that a decided preponderance of the testimony shows that the contract of appellees with Decker & Reed did not call for a perfect paper or record title, but did call for a marketable title and one that the attorney Schoonover should pronounce good upon an examination of the abstract. The contract was fully complied with on the part of Decker & Reed, for they furnished an abstract that was pronounced good by Schoonover, and the testimony, beyond question, shows that the title of Sellers which was conveyed to the appellees was a good and indefeasible and marketable title. The case, in essential particulars, is

not unlike the case of *Hinton* v. *Martin,* 151 Ark. 343, 356, where we said: "We think the contract under review did not call for a title shown to be perfect by an abstract, but that it did call for a marketable title, * * * and the purchaser will therefore be required to accept the title under his contract." The $1100 loan mentioned in the contract was an incumbrance for that amount with interest thereon in favor of one Perkins which Pipkin assumed, and he is not in an attitude to complain that this $1100, with interest and charges on same amounting to $220, was an outstanding incumbrance on the property. Pipkin was advised in the contract that this loan was outstanding, and the mention of the loan necessarily carried with it and put him on inquiry as to the nature of the incumbrance or incumbrances on the land which were executed to secure the loan. To be sure, if the evidence proved that Pipkin had not received a marketable title, he would not be bound by his contract, even though his attorney Schoonover examined the abstract and pronounced it good. See *Leroy* v. *Harwood,* 119 Ark. 418. But here the record shows that the appellees took a title that was not only marketable, but was also pronounced good by their attorney as the contract specified. The proof shows that the appellees are in possession of the lands under their title. No one, so far as this record discloses, has challenged their title or right to possession. Appellees seek by their cross-complaint to have their contract of purchase annulled, their deed cancelled, and their outstanding notes for the purchase money returned, etc. The burden of proof was upon them to point out in their pleadings and proof the specified defects in their title which would entitle them to the relief sought. *Bolton* v. *Branch,* 22 Ark. 435; *Benjamin* v. *Hobbs,* 31 Ark. 151. This they have not done. Appellees in their cross-complaint only make a general allegation that "Decker & Reed fraudulently represented to the said Eugene H. Pipkin that the title to said land was perfect," and in their proof they have not shown wherein the title was not perfect.

The decree of the trial court granting the appellees the relief for which they prayed is therefore reversed, and the cause will be remanded with directions to enter a decree in favor of the bank against the appellees and also against Decker & Reed as the indorsers of the notes of the appellees for the amount of such notes, and also for a reformation and foreclosure of the mortgage according to the prayer of the complaint, and for such other proceedings as may be necessary to conserve the rights of the parties and not inconsistent with this opinion.