[Crim. No. 1773. First Appellate District, Division Two.—March 16, 1934.]

THE PEOPLE, Respondent, v. MAX DAVIS, Appellant.

Charles Reagh and Martin Pence for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

SPENCE, J.—The defendant was charged with the crime of grand theft. He waived a jury and upon a trial by the court, he was convicted of the crime charged. He appeals from the final judgment of conviction and the order denying his motion for new trial.

The main contention of appellant is that the evidence was insufficient to sustain his conviction and we shall therefore proceed to a consideration of the evidence produced. We

may state in passing that the evidence offered by defendant conflicted in many details with that offered by the prosecution. We may also state that the evidence offered by the prosecution, consisting mainly of the testimony of the complaining witness, contained many discrepancies and inconsistencies. We shall endeavor, however, to deal only with the essential facts as shown by the evidence produced by the prosecution.

The charge against appellant arose out of a real estate transaction. Mrs. Hyland, the complaining witness, was the owner of a piece of real property located in San Diego County. It appears that this property was of the value of approximately $250 and had an assessed valuation of $30. Mrs. Hyland first entered into a written agreement of exchange with appellant whereby she agreed to exchange said San Diego property for a certain lot and improvements in San Francisco owned by the "S. F. Mortgage Company" and known as 1848 and 1850 Buchanan Street. She further agreed thereby to pay $625 in cash for the account of Frank M. Davidson, a cousin of appellant, and to "assume the balance of $7431.25 payable to the S. F. Mortgage Co., above mentioned, in monthly installments of not less than $65 per month including interest". The exchange was finally consummated in the following manner: Mrs. Hyland, at the request of appellant, delivered to appellant a deed to the San Diego property, naming Frank M. Davidson as the grantee therein; she paid to appellant the sum of $50 in cash and executed two promissory notes, one for $175 and the other for $400, making a total in cash and notes of $625; she also signed an agreement with the San Francisco Guarantee Company, referred to in the above-mentioned agreement as the "S. F. Mortgage Company", whereby she agreed to purchase the Buchanan Street property from said company for the sum of $7,431.25, payable in installments of $65 per month.

The circumstances preceding the execution of said agreements, upon which circumstances the prosecution based its claim of fraudulent representation, were as follows: Mr. Herrick, representing the San Francisco Guarantee Company, entered into an oral agreement with appellant regarding the sale by appellant of the Buchanan Street property. Said property had been acquired upon foreclosure and, as

it was against the company's policy "to carry real estate", they desired to sell it for $7,431.25, which was the amount necessary to cover the "loan and expenses". Appellant was a real estate broker. While Mr. Herrick testified that he did not deal with appellant as the company's agent in the sale of the property and that he did not agree to transfer it to appellant so that appellant could sell it as his own and that appellant had no "oral option to buy the property", he did testify that he did have an "agreement with him (appellant) for the sale of the property by him (appellant)". While it is difficult to determine the exact nature of the agreement from the record, we believe this to be immaterial. It is sufficient that there was some form of agreement regarding the sale of the property by appellant and we need not concern ourselves with the question of whether under said agreement appellant was dealing with the property on his own behalf or as agent for the company, selling for them upon a net price agreement. ■ Nor is it of any moment that said oral agreement may have been unenforceable between the appellant and the company, for it appears that said agreement was thereafter acted upon by the parties and carried out. After making said agreement with Mr. Herrick appellant contacted Mrs. Hyland. The price which he set upon the Buchanan Street property for the purpose of the exchange was $10,000. The price discussed by appellant and Mrs. Hyland for her San Diego property for the purpose of exchange was $2,000. It is difficult to reconcile the discrepancies in the figures found in the testimony, but it will be seen that by adding the company's figure of $7,431.25 and the sum of $625, being the amount represented in cash and notes, and the value of $2,000 placed upon Mrs. Hyland's San Diego property, the total approximates the $10,000 figure placed by appellant on the Buchanan Street property. It is undisputed that Mrs. Hyland inspected the Buchanan Street property, was entirely satisfied with the deal and took no exception to the prices fixed as the basis of exchange. She went with appellant to talk with Mr. Herrick and made no further inquiry regarding the price, confining her inquiries to other details connected with the transaction. Appellant had told Mr. Herrick that he was putting a price of $10,000 on the Buchanan Street property for the purpose of exchange with

Mrs. Hyland and explained to him that he was getting the San Diego property and cash, but that the San Diego property was of very little value. Mr. Herrick testified that "that part did not concern us", that he had given appellant a "net price", and that "it would not concern me what he did in the deal". Mr. Herrick would not say that appellant had an "oral option" on the property, but he said, "however, if we got in a deal with a man, and he was working on it, we would hold it up until he could consummate the deal, or he could not turn the trick". ■ According to Mrs. Hyland, appellant told her that there would be no commission to be paid by her and that "he was getting paid by the company for it". In other words, it is undisputed that both Mrs. Hyland and the company knew that appellant would profit by the consummation of the deal and there was no objection raised to his so doing or to the basis upon which the exchange was being made. As heretofore stated, Mrs. Hyland first entered into a written agreement of exchange with appellant, which agreement was thereafter carried out substantially in accordance with its terms. Notes were given, however, for part of the cash payment. After Mrs. Hyland had paid $250 on account of the cash payment and notes and, as she then claimed, had learned for the first time that the company was to receive for the Buchanan Street property only the $7,431.25 represented by the contract of sale, she became dissatisfied and caused appellant's arrest upon the charge of grand theft. Upon the trial the only claim of misrepresentation was the claim that the price of the Buchanan Street property had been misrepresented. The district attorney took the position that this was the only misrepresentation and he objected to any cross-examination of the complaining witness as to whether there were any other alleged misrepresentations. The trial court interrogated the district attorney as to the prosecution's theory and the district attorney said, "No, the misrepresentation was as to the price."

Appellant takes the position that no offense was committed, as under the circumstances there could be no misrepresentation as to the price. We believe that there is merit in appellant's contention, for under his oral agreement with the company he was either dealing with Mrs. Hyland on his own account or as the agent of the company with author-

ity to sell at any price above the said net price fixed by the company. Whether he was acting as principal or agent, the price of the Buchanan Street property was any amount which appellant might set in excess of the net figure (*Robinson* v. *Easton, Eldridge & Co.*, 93 Cal. 80 [28 Pac. 796, 27 Am. St. Rep. 167]; *Sill* v. *Ceschi*, 167 Cal. 698 [140 Pac. 949]), and he could no more misrepresent that price than could the owner of real property in representing a figure as the price at which he was willing to sell. Our attention has been called to numerous civil cases in other jurisdictions dealing with this general subject (*Sanders* v. *Stevens*, 23 Ariz. 370 [203 Pac. 1083]; *Wrench* v. *Von Schriltz*, 108 Kan. 748 [197 Pac. 197]; *Ripy* v. *Cronan*, 131 Ky. 631 [115 S. W. 791, 21 L. R. A. (N. S.) 305]; *Baker* v. *Wheeler*, 149 Ill. App. 579; *McLennan* v. *Investment Exchange Co.*, 170 Mo. App. 389 [156 S. W. 730]; *Loan Rock Bank* v. *Pipkin*, 169 Ark. 491 [276 S. W. 588]; *Aronowitz* v. *Woollard*, 166 App. Div. 365 [152 N. Y. Supp. 11]), and while there may be some apparent conflict of authority, we believe that the rules set forth in the authorities cited represent the prevailing view.

But even assuming that there could be a misrepresentation as to the price under the circumstances before us, we are of the opinion that the evidence was insufficient to show any such misrepresentation in the present case. After the complaining witness had testified in a most unsatisfactory manner regarding some of the details of the transaction, she thereupon stated that the first time that she learned that the company was to receive $7,431.25 was at the time when the agreement with the company was forwarded to her for signature when she was on a trip to Seattle. Her direct examination continued as follows: "Not before that? A. I cannot remember. Q. Well, now, are you sure that neither Mr. Herrick or Mr. Davis never told you prior to that time? That the price was $7,431.25 so far as the company was concerned? A. I am not positive. Q. Mr. Herrick may have said so? A. Mr. Davis might have told me. Q. Mr. Davis might have told you, that the company was getting $7,431.25? A. Yes. Q. But Mr. Herrick did not? A. No, sir. Q. You think Mr. Davis might have told you that? A. Yes, if I remember rightly, we did have a conversation about it. Q. Yes. A. And he said after I had

paid the $725.00 and given him the $2,000 property— Q. After you had paid the $725.00 and given him the $2,000 property— A. That the difference would represent the amount of money that the company would charge for the property. Q. After you gave Mr. Davis the property down there, and the $725.00, then, the difference of $7,431.25 would be what the company was to get? A. Yes. The Court: Well, gentlemen, what is this all about?'' The amount of $725 referred to in the testimony was subsequently changed by the witness to the sum of $625. The remaining portions of the above-mentioned testimony were never changed or modified in any manner. Subsequently the trial court asked, ''Why was it, when you knew the company was getting $7,431.25, that was what they were getting, why did you give the deed to your property down there for $2,000 to Mr. Davidson or to Mr. Davis, and also give these notes for either $625.00 or $725.00? A. Because he said the price was $10,000. . . . '' At that time the trial court was evidently unable to understand the theory of the prosecution and we must confess that we are now unable to find any theory upon which the conviction may be sustained. The testimony of the complaining witness showed that she knew that appellant was to receive the San Diego property together with the $625 represented in cash and notes and that ''$7431.25 would be what the company was to get''. According to her own testimony, the deal as carried out was precisely the deal as represented. We need not concern ourselves as to why Mrs. Hyland entered into this transaction. We may point out, however, that she made a cash outlay of only $50 at the time and obtained a piece of city property producing an income of $80 per month upon an agreement which required that she make monthly payments thereon of only $65 per month. There was no showing that the property was not of the value of $10,000 and the complaining witness may have been glad to seize the opportunity to acquire the income-producing property on apparently favorable terms and to dispose of her unimproved property in San Diego County at an exchange price of $2,000. Even after one of the tenants had moved, and Mrs. Hyland became dissatisfied, she made no effort to rescind the entire transaction, but merely attempted to force appellant to return his profit or commission, whichever it may be termed. This she could

not do under the facts before us. The parties dealt at arm's length in entering into this transaction and it is possible that one may have profited thereby more than the other. The testimony fails to prove even this, but assuming that it did, there would be no basis for a criminal prosecution.

In view of the conclusions which we have reached, we deem it unnecessary to discuss certain other points raised by appellant. The judgment and order denying the motion for new trial are reversed and the cause is remanded for a new trial.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 31, 1934, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 15, 1934.