WELCH v. FARBER.

4-3277

Opinion delivered January 22, 1934.

694

*W. L. Curtis* and *Roy Gean,* for appellant.

*Cravens, Cravens & Friedman,* for appellee.

BUTLER, J. On the 15th day of May, 1931, Mrs. Charlotte Vincent, now Mrs. Charlotte Vincent Welch, contracted to and did sell to Arnold Farber a parcel of land in the city of Fort Smith upon which was located a building in which the Monumental Cut Stone Company had been engaged in business for a number of years. This was the trade name under which Mrs. Vincent and her husband operated. A stock of monuments, markers and other material, together with the office fixtures, machinery and equipment used for carrying on the business, was sold with the lot and building. The agreed price was $15,000, five thousand dollars to be paid in cash and the balance in deferred payments evidenced by promissory notes bearing interest at the rate of six per cent. per annum. The first six notes were for $1,200 each, the one first maturing being due on November 15, 1931, and the others falling due at intervals of six months thereafter. The last two notes were for $1,400 each, one due November 15, 1934, and the other on November 15, 1935. A written contract was entered into between the seller and the buyer by which the title to the personal property was retained in the seller until all the notes had been paid, and Mrs. Vincent was to, and did, prepare a deed which was placed in escrow in a Fort Smith bank according to the terms of the contract. The contract contained other provisions which are not material to the controversy here involved.

Default having been made in the payment of the matured notes, and, after some forbearance on the part of the seller, she filed suit in the chancery court alleging such default and that the defendant, Farber, was selling and disposing of the merchandise on hand without refer-

ence to cost or value and appropriating the proceeds to his own use; that he was threatening to remove and carry away the remainder with the equipment and fixtures, and that he was insolvent. She prayed for a receiver pending the litigation to take charge of, and preserve, the property. At the final hearing it was agreed that the relief sought was the cancellation of the deed and the recovery of the property delivered to Farber and the bills receivable obtained by him resulting from the sale of the property, the plaintiff waiving any right to a money judgment against the defendant on the notes referred to in the complaint.

The defendant answered admitting the purchase, the execution of the contract, and the failure to pay the notes as they matured, but pleaded as an affirmative defense fraud practiced by the plaintiff in the negotiations of the sale and the execution of the contract in that certain material, false and fraudulent representations were made to the effect that the income of the business prior to the time of the sale approximated the yearly sum of $15,000, which representations were relied on and were the inducing cause for the purchase and the execution of the contract; that the same were false and that the annual income instead of being as represented, did not exceed the sum of $8,102.94. The defendant further alleged that he had paid to the plaintiff besides the initial payment of $5,000 other sums on the principal, and the interest accruing, in the aggregate sum of $6,100, and that he had realized from the business less than $3,100. He prayed for a rescission of the sale, cancellation of the notes, and that he be allowed to offset against the sums realized from the business the amount paid to the plaintiff, and that he have judgment for the difference between said amounts in the sum of $3,000. This answer was made a cross-complaint to which the plaintiff filed her reply denying its allegations.

On the testimony adduced the trial court found for the defendant on his cross-complaint. On motion, this decree was set aside, the case was reopened and further testimony taken which resulted in a final decree holding in effect as in the first.

The court made a number of findings of fact and law which were in effect that the plaintiff recover the property sold Farber, less such as had been disposed of by him prior to the appointment of the receiver, and that the deed describing the real estate held in escrow be returned to her and canceled, and that she retain possession of a "sand blasting machine" which had been affixed to and become a part of the real estate.

The court found the allegations of fraud of the cross-complaint sustained by the evidence and that the amount paid appellant exceeded by the sum of $2,500 the value of the merchandise sold by him and for which he was entitled to judgment, and in effect denied appellant's prayer that she have the bills receivable for her merchandise sold by Farber, for which he had not collected, but that Farber should recover all of the property, accounts and money in the hands of the receiver, less that ordered returned to appellant as aforesaid.

This appeal challenges the correctness of the decree on three grounds. First, that the finding of the chancellor to the effect that fraud was practiced by the plaintiff (appellant here) and relied upon by the defendant (appellee here) is against the preponderance of the testimony; second, that the court erred in permitting a recovery in favor of the defendant because of a delay on the part of said defendant in seeking to rescind his contract of purchase; and, third, that the judgment in favor of the defendant on his cross-complaint is not sustained by the evidence, because it is claimed that the preponderance of the evidence is against the finding of the court in that respect, and shows that the amount of the merchandise sold and the reasonable rental value of the building equals or exceeds the amount paid by the defendant to plaintiff on the purchase price.

The principles applicable to the issues involved and the evidence adduced are well settled. On appeal from courts of equity, this court tries and determines the case *de novo,* and only on the competent testimony adduced. If it should appear that the evidence is equally balanced, or so nearly so as to leave it doubtful where the preponderance lies, the decision of the trial court will not

be disturbed. But, where a candid consideration and analysis of the evidence leads this court to the conclusion that the preponderance is against the judgment and decree of the lower court, it becomes our duty to reverse the decision. *Leach* v. *Smith,* 130 Ark. 465, 197 S. W. 1160; *Johns* v. *Road Imp. Dist., etc.,* 142 Ark. 73, 218 S. W. 389.

Applying these rules to the consideration of the evidence adduced, we have no hesitancy in reaching the conclusion that the finding and decree of the chancellor is against the preponderance of the evidence on each of the questions decided by him relative to and sustaining the prayer of the cross-complaint. Fraud may be shown not only by direct or positive evidence, but may be proved by circumstances from which an inference of fraud may arise. The burden is upon him who alleges fraud to prove the same by clear and satisfactory evidence. *Russell* v. *Brooks,* 92 Ark. 509, 122 S. W. 649; *DuFresne* v. *Paul,* 144 Ark. 87, 221 S. W. 485; *Hildebrand* v. *Graves,* 169 Ark. 210, 275 S. W. 524. In order to establish actionable fraud, the representations must be of a decided and reliable character which are calculated to mislead the purchaser and induce him to buy on the faith and confidence of the same. The false statement must be of an existing fact known by the one who makes such statement to be false, or, where he does not know, asserts it to be true with the intent to have the party to whom it is made act upon it to his injury. Such must be the effect on the party to whom the statement is made. *Joyce* v. *McCord,* 123 Ark. 492, 185 S. W. 775, and cases cited *supra.*

To satisfy this rule, reliance must be had upon the testimony of Farber, which was in line with the allegations of his cross-complaint.

It is the contention of counsel for the appellee that his testimony relating to the alleged false representations is corroborated by the testimony of Mr. Shaw, the auditor employed to audit the books of the Monumental Cut Stone Company. It is also appellee's contention that Shaw's testimony is to the effect that Mrs. Vincent attempted to bribe him and to pay him the sum of $100 to

"doctor" his audit so as to induce Farber to purchase at the price she had named, $20,000. We have carefully examined the transcript of Mr. Shaw's testimony and think the interpretation of counsel is unwarranted. We are of the opinion that it does not corroborate the statements of Farber, nor does he state that Mrs. Vincent attempted to bribe him to alter the audit. In testifying as to how he made the audit and as to the books he used, he stated that it was not a complete audit because he did not have a complete set of records; that he had to use a combined cash book and journal; that he asked Mrs. Vincent for the general ledger and for the inventory, and that she said she didn't have either, and he so informed Farber. Neither Farber, Mrs. Vincent nor Shaw were asked if any explanation was given by Mrs. Vincent as to why she did not have the records asked for, and no explanation was given by any other witness.

In answer to a question relative to conversations had with Mrs. Vincent, Shaw stated that he told her that it did not look to him like the business would justify the price she was asking, and that she said that there were some items of income which were not on that set of records, and when he was asked, "Where did she claim the other set of records was?" he answered, "She didn't say." He was asked if he requested her to produce them and answered that he did, but that he didn't remember what she said. He was then asked, "Can you recollect what she said about the other records?" and answered, "The only thing I can be positive of is the fact that she said all of the sales weren't on the book that I had audited." Relative to the offer of $100 made by Mrs. Vincent to Shaw, his testimony is that "she asked me if I would help her sell it, and I told her I would not on that $20,000 basis because I could not tell the man the business was worth that when it wasn't; and the conversation went back and forth." When asked if anything was said about getting him to change the audit, he said, "She asked me if I would fix it so it would look better." He was then asked if "she offered to pay you anything," and answered that she offered to pay him $100 and did pay him that amount and that he had spent it. He was

then asked, "What did she give you that $100 for?" and he answered, "She gave me the $100 to help her sell the business."

The most to be gathered from this testimony is that the witness, Shaw, inferred that there were other records than those he had examined, and it is as reasonable to presume, as otherwise, that he had reference to the general ledger and inventory which Mrs. Vincent told him she did not have. He nowhere states, even when pressed, that she told him she had another set of books, and that from these it would appear that the income from the preceding year was $15,000 or any other sum. It is also clear that the offer by Mrs. Vincent and the acceptance by Shaw of the $100 was not considered as a bribe but as a fee paid Shaw for a legitimate purpose, namely, his assistance in the sale of the business. This he told Farber, and also her request for him to fix the audit so it would look better.

The only other person who testified relative to the $100 paid to Shaw and the statements made during the negotiations for the sale and purchase of the business was Mrs. Vincent. She testified that she proposed to sell her business to Farber for $20,000, but before he would trade with her he had an audit made and declined to buy at that figure; that sometime after this he approached her and offered $15,000 for the business, and she accepted it; that she never represented to him or to Shaw, or to any one else, what the amount of gross sales was, or the net earnings; she denied the testimony of Farber that she had prepared a list of figures on a piece of yellow paper purporting to show what the income was for the year preceding the sale; which amounted to $15,778.32, or that she had gotten this off of a private set of books which correctly showed the income from the business; and she had never made such statements to Farber or any one else; that she knew nothing about the adding machine figures which had been exhibited by Farber with his testimony; that she did not know how he had gotten these figures or from what source they were derived, except that she had turned her bank book over to him and he might have gotten it from that, as

that was the only way he could have gotten it; that the bank book showed deposits that didn't represent sales from the business, but included sums from rental property, borrowed money, and other items. (It was shown by a witness that the first items on the adding machine record were indentical with items which appeared as deposits on the bank book.) Mrs. Vincent stated that she had never seen the audit made by Mr. Shaw, and had never been furnished a copy of it, although she was present during the time he was working on the audit which was done at her place of business, and she knew the work was being done for the purpose of informing Mr. Farber, in order to enable him to determine whether or not he would buy the business. In reference to the $100, she stated that Shaw asked her what she would give him if he would help her sell the shop and that she told him she would give him $100; that she did pay him this sum when the sale was made.

The only testimony relating to the representations claimed to have been made by Mrs. Vincent to Farber about the set of books and that they showed an income in excess of $15,000, is the testimony of Farber himself, on the one hand, and Mrs. Vincent on the other, and when Farber's statement regarding this is viewed in the light of what he actually did and how the trade was finally consummated, it seems to us to be unreasonable and contrary to the conduct of a prudent business man, such as the evidence shows Farber to have been.

When offered the business at a certain price, before he would discuss the amount, he states he had an auditor examine the books and was told by that auditor that the income as reflected by the combined cash book and journal was a little in excess of $8,000, but that the general ledger and inventory were missing, and he had not been able to obtain them. His testimony also shows that on the receipt of the audit and the information furnished him by Shaw, which included the offer made by Mrs. Vincent to Shaw of the $100, and the request by her that he make the audit look better, Farber refused to pay $20,000 and broke off negotiations; that afterward he bought the property for $5,000 less than the sum first asked. This

testimony shows the fore-thoughtful and prudent business man, and yet further on in his testimony he assumes quite a different character. His entire character changes to that of the simplicity and confiding nature of a child, so that on the unsupported statement of Mrs. Vincent as to what the income was he was induced to pay out $5,000 in cash and to obligate himself to pay $10,000 more, when he had been previously informed of her request that the audit be changed to make a better showing of income. He told of how appellant deceived him by having some figures on a yellow sheet of paper which she had prepared from "the other set of books." He was so trustful he was willing to accept this as a true statement of the income from the business, without ever seeing these books, and so confiding he did not even obtain and retain the "yellow sheet" and as a voucher for the truth of his statement had only an adding machine slip to show, which he himself had prepared.

His testimony has but little weight with us, and fails to satisfy the rule before stated regarding the sufficiency of proof of fraud. We first conclude that the evidence, fairly weighed, preponderates against the claim of fraudulent representations, and, further, that if any were made they were not relied upon by Farber, but that he took advantage of the information gained from his investigations to beat Mrs. Vincent down $5,000. Another significant fact, in our opinion, is that Farber has never explained when or how he became apprised that the statements he claims Mrs. Vincent made to him were false. He was in charge of the business for more than a year and a half and during that time he had ample opportunity to thoroughly acquaint himself with the business, yet he made no complaint to the seller, and gave no evidence of being disappointed in the business. The only thing the record discloses he did with respect to Mrs. Vincent was to importune her for indulgence in the payment of his obligation and to secure from her a postponement of the first note then due to beyond 1935. He was making small payments on the principal and paid the accrued interest during that time, and it was only when Mrs. Vincent would no longer defer her de-

mands and brought suit to enforce them that Farber discovered that he had been defrauded. In attempting to explain how and when the discovery of the fraud was made, which Farber in his testimony did not disclose, his attorney argues that the discovery was made when the motion for the production of the books was filed and there was only the one set—the one audited—which was produced and the correct set showing the true amount of the income, as claimed by Mrs. Vincent, was not produced. This argument is not valid, for an examination of the motion for the production of the books discloses that it contains the following statement: "* * * it is necessary that said defendant have access to said books, papers, records and documents for the purpose of having the same audited; that the defendant contends and will contend that the income and value of said business was grossly exaggerated and misrepresented by the plaintiff herein, and that the defendant, relying upon said misrepresentations, entered into the contract referred to in plaintiff's complaint." This motion was filed January 2, 1933, after the suit was filed and the receiver appointed, and Mr. Farber did not, in that motion, or anywhere else, disclose how or when he discovered he had been defrauded.

During all this time the record shows that he was selling the property which had been conveyed to him by the conditional sale and using the proceeds for other purposes than for paying his debt to Mrs. Vincent, and in our opinion the sums thus gained were more than sufficient to compensate him for the money paid appellee.

We think therefore that, even if it had been shown that Mrs. Vincent deceived Farber and induced him to make the purchase by false statements, the conclusion reached by the trial court regarding the amount of material sold by Farber and allowed him as an offset is not supported by the weight of the testimony, and that in fact he has suffered no injury.

The decree is, for the reasons stated, reversed and the cause remanded with directions to dismiss the cross-complaint, and for such further proceedings in con-

formity with this opinion as may be necessary to grant
to the appellant the relief prayed, with her costs.