Blaine **BRADLEY** et al., Plaintiffs,

v.

**SOUTHERN FARM BUREAU CASUAL-
TY INSURANCE COMPANY,**
Defendant.

**No. PB 73 C–213.**

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

April 16, 1975.

Dickey, Dickey & Drake, Pine Bluff, Ark., for plaintiffs.

Reinberger, Eilbott, Smith & Staten, Pine Bluff, Ark., for defendant.

## MEMORANDUM OPINION

OREN HARRIS, District Judge.

In this proceeding plaintiffs seek damages from defendant on the basis that defendant fraudulently obtained releases of their causes of action arising out of an automobile accident with one of defendant's insureds.

Plaintiffs are residents of Jefferson County, Arkansas, and defendant is a corporation incorporated in the State of Mississippi, with principal offices in that state. There is a complete diversity of citizenship and the amount in controversy exceeds $10,000.00, exclusive of interest and costs. Jurisdiction is thus established under 28 U.S.C. § 1332.

In their complaint, as amended, the plaintiffs allege that they were occupants of an automobile involved in a collision with a vehicle being driven by defendant's insured, Jerry Earl Roach, on State Highway No. 1 near Gillette, Arkansas, on March 4, 1973. They allege that Roach drove his vehicle across the centerline of the highway, striking their vehicle head-on, causing severe injuries to each of the plaintiffs, and that their injuries were proximately caused by the negligence of Roach.

The plaintiffs further allege that, on March 13, 1973, an insurance adjuster, Larry Cash, employed by defendant, came to the home of plaintiffs and obtained the signatures of Blaine and Dorothy Bradley on a release of their causes of action arising out of the collision, for the sum of $1,000.00. Plaintiffs state that, at the time the release was signed, Blaine and Dorothy Bradley were under the influence of pain and pain-relieving drugs and that they were illiterate.

The complaint of plaintiffs also alleges that at a later date another agent of defendant contacted Melvin Bradley while he was at work and unlawfully obtained a release from him for the sum of $300.00.

The plaintiffs claim that the signatures of plaintiffs were obtained on the releases by false and fraudulent representations by defendant's adjusters; that the releases were merely receipts for the money they were receiving, that such payments covered only medical bills to date, and that defendant was responsible only for medical bills, automobile repairs, loss of wages and nothing more.

In addition to the alleged misrepresentations, plaintiffs claim that defendant took advantage of the illiteracy of Blaine and Dorothy Bradley, failed to read the release to them, failed to explain its effect, and did not leave a copy with them so that they could have someone else read it. Plaintiffs contend that they were overreached by defendant due to the superior knowledge of the adjusters as to the provisions of the insurance coverage involved, the liability exposure

of the insured, facts relating to the extent of injury to plaintiffs and that defendant took advantage of the economic plight of plaintiffs on the basis of the alleged misrepresentations.

Plaintiffs demanded that the releases be rescinded, but defendant refused. In this action, plaintiffs have elected to sue defendant for damages founded upon alleged fraud, overreaching and coercion, rather than seeking to have the releases set aside. Plaintiffs assert that they are entitled to recover damages in the amount of $300,000.00 for the loss of their causes of action by reason of the alleged fraud, $15,000.00 for their emotional distress and mental anguish arising out of the realization that they had signed away their causes of action, and $5,000.00 for attorney fees and expenses of litigation.

In its answer, defendant admits the diversity of citizenship and denies each of the other allegations of the complaint. The matter was heard by the Court, sitting without the intercession of a jury, pursuant to agreement of the parties, on February 6 and 7, 1975. Evidence was heard and received and the cause taken under advisement. Briefs have been submitted by counsel for the parties and the cause is ready for decision. Findings of fact and conclusions of law are incorporated herein pursuant to Rule 52, Federal Rules of Civil Procedure.

On the basis of the evidence adduced as to the occurrence of the collision between the Bradley vehicle and the vehicle being driven by defendant's insured, Jerry Earl Roach, the Court finds that the collision and resulting injuries to the plaintiffs were directly and proximately caused by the negligence of Jerry Earl Roach. Plaintiffs did have a cause of action against Mr. Roach for damages to their vehicle, and for any personal injuries, with an attendant right to recover any damages flowing therefrom, in accordance with the laws of the State of Arkansas.

Jurisdiction is admitted and established pursuant to 28 U.S.C. § 1332.

In order to obtain a better understanding of the circumstances of this litigation and the issues as developed from the testimony in the case, a somewhat detailed statement on the facts appears to be advisable.

In the first place, it is undisputed that the Bradley automobile was damaged, and that Blaine Bradley was entitled to recover for the reduction in value of the vehicle. It is also undisputed that Blaine Bradley, Dorothy Bradley and Melvin Bradley sustained injuries in the collision. However, the nature, extent and duration of their injuries is a matter of dispute.

Blaine Bradley was seen and treated at the emergency room at Dewitt City Hospital by Dr. Hester on the date of the accident and went to the emergency room at Jefferson Hospital, Pine Bluff, two days later. He testified that he suffered two broken ribs in the accident, although his testimony was not supported by any medical evidence. Dr. Hester, the only medical witness to his injuries, testified that he had superficial abrasions and contusions, muscle abrasions and contusions, nothing specific. He was seen only once by Dr. Hester. Medication prescribed for him was only Equogesic, a muscle relaxant and analgesic, containing meprobamate plus aspirin. The medication was described as a mild analgesic, containing only aspirin and a muscle relaxing ingredient.

Dr. Hester was definite in stating that the x-ray examination of Blaine Bradley, including his rib cage, right arm, right leg and knee showed there was no bony involvement, no broken bones. Blaine Bradley was given first-aid treatment, the Equogesic prescription, and released. He did not return for further treatment, or see any other doctor for treatment after that date.

Melvin Bradley, the then twenty year old son of Blaine and Dorothy Bradley, was seen by Dr. Hester in the emergency room at Dewitt City Hospital the day of the accident and two days later, March 6. Dr. Hester testified that he had multiple contusions and abrasions over his

body, back, arms, knee, cervical area of the neck, most of them superficial. He had some muscle pain in the lower back for a period of time. He was also given a prescription for Equogesic and not seen again by a physician for his injuries until he returned to Dr. Hester in April of 1974. At that time, he complained of some residual back pain, which was diagnosed as just a fibrosis of the lumbar rectal muscle due to the muscle strain and tearing. He was again treated with muscle relaxants and analgesics. Dr. Hester did not find any permanent disability to Melvin Bradley. Melvin returned to his farm employment the day after the accident.

Mrs. Dorothy Bradley received the most serious injuries in the accident. Dr. Hester saw her in the emergency room at Dewitt on the date of the accident, and found that she had a severe, avulsed laceration of the right forehead and brow, a traumatic contusion to the right eyebulb, with hemorrhage in the anterior chamber of the eye. He repaired the cut on her forehead with sutures, probably thirty stitches, close together, to eliminate as much scar tissue as possible.

She was given a prescription for Darvon 65, an analgesic pain medication. A bandage was applied, which covered the right eye. She was seen again on March 6, 1973, when the dressing was changed. On March 12, 1973, Dr. Hester evacuated a hematoma which had developed on the forehead. On March 14, the wound was re-dressed, and she was seen again on March 19, March 20, March 23, and April 30, 1973. She complained of loss of vision in her right eye and was referred to Dr. Nixon, an ophthalmologist in Pine Bluff. She also complained of a loss of hearing in her right ear and was referred to Dr. Buckley in Pine Bluff.

Dr. Nixon first saw Mrs. Bradley on April 22, 1974, over a year after the accident and the referral by Dr. Hester. Dr. Hester had found blood in the eye, and diagnosed a hyphema, which resulted in the referral. Dr. Nixon examined Mrs. Bradley and found no evidence of hyphema. He also found no residual eye defects which he would attribute to any injury arising out of the accident. The injured eye's vision was only slightly less than normal and was corrected to normal by glasses. Dr. Nixon would not have thought any residual defects attributable to an injury to be correctable by glasses, and did not believe that the accident could have had any effect on her vision.

Although, Mrs. Bradley reported to Dr. Buckley that she had a complete loss of hearing on the right side, he was not satisfied with her reponses, and referred her to Dr. Bailey, at Little Rock, for audiometric examination. From that examination, Dr. Bailey was of the opinion that she had better hearing on the right than on the left side, and that her hearing on the right was at a useable level. There was no medical evidence relating any hearing loss to the injury sustained in the accident.

On March 13, 1973, some nine days following the accident, Larry Cash, an employee of defendant, came to the home of the plaintiffs at Route 1, Altheimer, Arkansas. Blaine Bradley was at home in bed. Mrs. Dorothy Bradley was there as was her sister, Mrs. Inez Williams. The son, Melvin Bradley, was also present, at least part of the time. The adjuster took a recorded statement from Blaine Bradley, in which he stated that he had two broken ribs on the left side. He also told the adjuster that his wife got her head split open on the right side.

He told Mr. Cash that Dr. Hester had said he had a cracked rib, and that at Pine Bluff they found two broken ribs. He said the Doctor told him he would be off work for some six weeks due to his ribs.

None of the plaintiffs testified that the adjuster, Larry Cash, made any express representations to them that the money he agreed to pay them, $1,000.00, was only an advance on any amounts due them, or that if they did not accept that amount they would get nothing, or that they were only signing a receipt for the money. Although Blaine Bradley was il-

literate, his wife could effectively read and write, his son, Melvin Bradley, could read and write, and Mrs. Bradley's sister, Mrs. Inez Williams, who signed the March 13, 1973, release by Blaine Bradley and Dorothy Bradley, as a witness, could also read and write. The adjuster stated that he read to Blaine Bradley a part of the release. In his deposition, Blaine Bradley stated that he could have been told that he was signing a full release, but did not remember it.

There was testimony by plaintiffs Blaine Bradley and Dorothy Bradley that they were both under the influence of pain medication, and that their minds were clouded. From the testimony of Dr. Hester, it appears that there was no medication prescribed for either of them which would have the effect of causing hallucinations or impairing judgment. The pain medication prescribed was non-narcotic, mostly either aspirin or a similar product.

The Court concludes that the plaintiffs, Blaine and Dorothy Bradley, were not under the influence of drugs at the time the releases were signed, and that the circumstances were such, including the lucid recorded statement given by Blaine Bradley, that the adjuster was fully justified in believing that the plaintiffs, Blaine and Dorothy Bradley, had the necessary mental capacity to execute the releases willingly and with full knowledge of their effect.

There is some indication from the testimony of the plaintiffs that they did not fully understand the import of the releases, and that they believed them to be only receipts for the money they were receiving. However, the evidence is clear that this belief was not engendered by any false or fraudulent representations on the part of the adjuster, and that such a belief was not communicated to him, in order that he would have had a duty to correct their impression. Dorothy Bradley, her sister, Mrs. Williams, and Melvin Bradley were present and each of them could read. The adjuster states that he fully explained the effect of the release to Blaine Bradley.

As to the second release, defendant received a medical bill for Melvin Bradley after the first release had been executed. Defendant had not previously been informed that Melvin Bradley had suffered any injuries in the accident. Another adjuster, Jerry Poole, was sent to the Bradley home on April 4, 1973, one month following the accident. He talked with Blaine Bradley, who rode with him to the farm where Melvin Bradley was employed. The release was explained, and the Court finds that both Blaine Bradley and Melvin Bradley executed the release with a full understanding as to its import and effect. This was admitted by Blaine Bradley in his deposition. Dorothy Bradley also signed this release, without any questions or objections which would put the adjuster on notice as to any lack of understanding on her part.

Plaintiffs contend that the consideration paid for the two releases was so grossly inadequate as to raise an inference that they were obtained by fraud. The Court has carefully considered the entire record concerning the extent of injuries and damages sustained by the plaintiffs by reason of the collision. In arriving at the figure of $1,000.00 for the first settlement, the adjuster took into consideration the statements and representations of Melvin Bradley as to the value of the automobile, and allowed $300.00 as damages to the vehicle.

The adjuster was informed of only some $216.20 in medical bills, and took into account the statement of Blaine Bradley that he had suffered two broken ribs and would be off work for some six (6) weeks, as purportedly related to him by the doctor, which would total $360.00 in lost wages. He was also told by Blaine Bradley that his wife, Dorothy Bradley, had her "head split open", and had an opportunity to personally observe their physical appearance. He then made a settlement offer of $1,000.00, which was in excess of the total of the

medical expenses, automobile damage, and potential loss of wages.

From the medical evidence, the Court concludes that neither Blaine Bradley nor Dorothy Bradley sustained any permanent disability arising out of the accident. Mr. Bradley's claim of broken or cracked ribs is refuted by the testimony of his own physician. While Dorothy Bradley did sustain a severe cut over the eye, and temporary interference with her vision, the doctors agree that she suffered no permanent injuries and that the scar healed well, with no substantial disfigurement. This was apparent to the Court from observation of Mrs. Bradley on the witness stand. Furthermore, there is no medical evidence to substantiate her claim of loss of hearing, and the audiometric tests indicate the ear in which she claims to have lost hearing due to the accident in fact functions better than the other ear.

The medical bill for Melvin Bradley was $98.15. He was seen only once by Dr. Hester prior to the settlement. He returned to work on a farm as a tractor driver without any loss of time or wages. He was, in fact, at work driving a tractor when the adjuster and Blaine Bradley went out to find him on April 4, 1973. There was nothing in his conduct or statements to indicate that he was suffering any ill effects from the injury, and there is no testimony that the adjuster made any statements calculated to mislead him as to the nature or effect of the release. Melvin and his parents were paid an additional sum of $300.00 for the second release. While Dr. Hester saw him in April of 1974 and found some residual back pain, he attributed this to a bruise or tear of the muscles, not a spinal injury, and attributed no disability to the accident.

■ The Court finds that the amounts of the settlements were not so grossly inadequate, in the light of the circumstances then known to or discoverable by the adjusters and the parties, as to create any inference of fraud. The law of Arkansas is clear that the adequacy or inadequacy of consideration for a release is to be determined by the circumstances and conditions existing at the time of its execution and not in the light of later events, Hutcheson v. Frito-Lay, 315 F.2d 818 (8th Cir. 1963). Further, it appears from the evidence that any possibility that the injuries were more severe than then known to the parties or adjuster has been negatived by essentially complete recovery of each of the plaintiffs, without permanent effects not well within the contemplation and knowledge of the parties at the time the releases were executed.

■ Counsel have devoted considerable portions of their briefs to the question of the requisite burden of proof to be borne by plaintiffs, whether common law fraud or constructive fraud must be demonstrated. Assuming, without deciding, that the plaintiffs must only demonstrate constructive fraud, the Court finds, from the evidence, that plaintiffs have failed to establish by a preponderance of the evidence any false representations or concealment by defendant or its agents, any detrimental reliance by plaintiffs upon any representations or failure to disclose any relevant matters by defendant or its agents, or that plaintiffs suffered any damages by reason of the releases being signed. Each of these matters is a necessary element of the cause of action for constructive fraud, Welch v. Farber, 188 Ark. 693, 67 S.W.2d 588 (1934), Bridges v. United Savings Association, 246 Ark. 221, 438 S.W.2d 303 (1969).

■ Fraud is never presumed, but must be affirmatively proven by the party who alleges it by testimony which is clear and convincing. Bridges v. United Savings Association, supra. The proof adduced in the case at bar falls far short of demonstrating fraud on the part of defendant, Southern Farm Bureau Casualty Insurance Company, or its agents. The Court, therefore, concludes that judgment should be entered in favor of defendant in this cause, and the complaint of plaintiffs dismissed.

Consistent with the findings and conclusions an order will be entered denying the claims of the plaintiffs and dismissing the complaint. Plaintiffs to bear the costs.