Jeffrey MORRIS, et al. *v.* VALLEY FORGE
INSURANCE COMPANY

90-185                                   805 S.W.2d 948

Supreme Court of Arkansas
Opinion delivered March 18, 1991

*Gary Eubanks & Assoc.*, by: *Hugh F. Spinks* and *James Gerard Schulze*, for appellant.

*Barber, McCaskill, Amsler, Jones & Hale, P. A.*, by: *Gail K. Ponder*, for appellee.

JACK HOLT, JR., Chief Justice. This case concerns legal malpractice insurance coverage wherein the appellants, Jeffrey Morris and James Mays, appeal from a grant of summary judgment in favor of Mays' insurance carrier, the appellee, Valley Forge Insurance Company (Valley Forge). The trial court held that Mays' policy with Valley Forge afforded no coverage for a legal malpractice judgment obtained against him by Morris. Since we find remaining issues of material fact, we reverse the trial court's decision and remand the case for trial.

Mays was an attorney practicing in Little Rock who represented Morris in a divorce action. The two were also friends and business associates in various investment ventures. Mays sold a motel, owned by his company, the Mays-Connealy Corporation, to JWM Investment Enterprises, Inc. (JWM), a company owned by Morris. Mays did not inform Morris that the property was already encumbered by a substantial lien, nor did he provide clear title upon Morris' completion of purchase payments, as he had promised. The bank foreclosed on the motel, and Morris lost both the property and his investment.

Morris brought suit in Pulaski County Circuit Court against Mays, individually and as a principal of the Mays-Connealy Corporation, alleging legal malpractice, fraud, and breach of contract. The claims against the corporation and all allegations of fraud and breach of contract were dropped during trial, however, and the case was submitted to the jury on the single issue of

negligent malpractice against Mays. The jury returned a verdict in favor of Morris for the amount of his investment in the motel. Valley Forge provided a defense for Mays in that action, under a reservation of rights.

Following judgment, Valley Forge filed an action for declaratory relief in Jefferson County Circuit Court, contending that the policy issued to Mays did not provide coverage for the judgment. Valley Forge then filed a motion for summary judgment, specifically alleging: 1) that Mays' acts and omissions resulting in the loss to Morris were not done in the performance of legal services, as required by the policy; 2) that even if legal services were rendered, coverage was excluded under the exception for "any dishonest, fraudulent, criminal or malicious act or omission of the insured;" 3) that Mays' acts fell within the exclusion for professional services rendered for a business owned by the insured; and 4) that Mays' acts fell within the exclusion for performance of professional services as an attorney and an officer, director, employee or trustee of a business.

After consideration of the pleadings, to which portions of the testimony at the previous trial were attached, depositions, briefs, and oral arguments of counsel, the trial court granted the motion, holding that Mays' conduct "did not constitute performance of professional services as a lawyer" and that such conduct "fell within policy exclusions."

We agree with the appellants that the exclusions and policy provisions relied on by Valley Forge, and presumably upon which the trial court based its decision, involved questions of fact and summary judgment was improper.

## PERFORMANCE OF PROFESSIONAL SERVICES

The trial court first erred in finding, as a matter of law, that the motel transaction did not amount to professional services rendered by Mays as Morris' attorney.

The policy provided that Valley Forge agreed:

> To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages:
>
> 1.  arising from the performance of professional services for others in the insured's capacity as a

lawyer, real estate title insurance agent or notary public because of an act or omission of the insured or of any other person or firm for whose act or omission the insured is legally responsible . . . .

Morris contended throughout the trial that the motel transaction came about as the result of Mays' representation and advice during his divorce. Morris, who was living in Pine Bluff when the divorce proceedings first began, testified that Mays recommended he move to Little Rock so that Mays could better represent him. Also at Mays' suggestion, Morris formed a corporation, JWM, in an attempt to shield assets from his wife. The purchase of the motel was further recommended by Mays as a way to generate income and conserve assets.

■ Mays denied that the discussion concerning the sale of the motel occurred in any context other than between friends mutually interested in a business investment. Valley Forge further points to Morris' testimony where he conceded that he wasn't "relying on Mays as his attorney" when Mays drew up the papers for the sale. Valley Forge argues that a distinct line may be drawn between Mays' representation and advice in the context of Morris' divorce, and Mays' conduct in the actual property transaction. The line is a dubious one and, at best, presents a question of fact.

■■ Summary judgment, like a mistrial, is an extreme remedy and should only be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ark. R. Civ. P. 5(c); *Guthrie* v. *Kemp*, 303 Ark. 74, 793 S.W.2d 782 (1990). The burden of proving that there is no genuine issue of material fact is upon the movant, and all proof submitted must be viewed in a light most favorable to the party resisting the motion. Any doubts and inferences must be resolved against the moving party. *Guthrie* v. *Kemp, supra.*

Morris repeatedly testified that he entered into the purchase on the direct advice of Mays in connection with his divorce. Such a relationship would impose a fiduciary duty on Mays to disclose the existence of the lien and to recommend to Morris that he seek independent counsel. *See* Model Rules of Professional Conduct 8.1 (1985). (The jury, at the trial on this matter, received instructions on negligent legal malpractice and obviously recog-

nized the existence of the attorney-client relationship, and Mays' corresponding duties, since it rendered a verdict against him.)

■ We note that the trial court, in its order, stated that the facts concerning Mays' conduct were "well known as there [had] already been a full trial with regard to Mays' liability to Morris," and that the only remaining issues were whether those facts fell within policy coverage or exclusion. This finding is erroneous, however, since the established facts before the court were in dispute. Although our decision here may result in a retrial of essentially the same facts, the specific issues of policy coverage must be determined by a jury or trier of fact as the facts deciding those issues remain in conflict.

## DISHONEST OR FRAUDULENT ACTS EXCLUSION

Summary judgment on the basis of the policy's exclusion for "dishonest, fraudulent, criminal, or malicious" acts or omissions was also improper.

■ Proof of fraud requires a showing of five elements: 1) a false representation of a material fact; 2) knowledge or belief on the part of the person making the representation that the representation is false; 3) an intent to induce the other party to act or refrain from acting in reliance on the misrepresentation; 4) a justifiable reliance by the other party; and 5) resulting damages. *Brookside Village Mobile Homes* v. *Meyers*, 301 Ark. 139, 782 S.W.2d 365 (1990).

Again, the testimony in the depositions and at trial creates factual questions as to whether Mays actually intended to defraud Morris and to induce his reliance on the acts and omissions at issue.

The facts *not* in dispute show that Morris' company, JWM, paid the Mays-Connealy Corporation $100,000 for a lease with an option to purchase the motel. The total purchase price was listed at $175,000. As stated earlier, Mays did not inform Morris of an approximate $80,000 lien on the property. Morris later exercised his option to purchase and paid, through JWM, $35,000 toward the purchase price. Upon Morris' discovery of the existence of the lien, Mays told Morris that if he would pay the balance of the purchase price ($40,000) he would deliver title. Morris paid the balance, but Mays never delivered title, and the

bank foreclosed on the motel.

■ What remains in dispute is whether Mays' failure to deliver clear title was fraudulent or dishonest. Mays' testimony at trial on this issue is sufficient to create a genuine issue of material fact. The following exchange occurred on direct examination:

Q: What was your position in December of 1984, Jim, about whether your corporation was required to deliver a deed to Mr. Morris' corporation?

A: It was my belief that, technically, it was not necessary to do so, but if he were to pay me his half of what we were losing in M & M that I'd take that and pay off the mortgage that was there and deliver one to him.

Q: In other words, if you received the money from the telethon, you would use it to extinguish the lien at Worthen.

A: That's right.

Q: And deliver the deed.

A: That's correct.

\* \* \* \*

Q: Was there any time when you formed any intent not to pay off the mortgage at Worthen Bank and deliver a deed, if you had the money to do it.

A: I always intended to do that.

\* \* \* \*

This testimony, at the least, compels a consideration of appellants' argument that Mays never intended to permanently withhold delivery of title but, rather, hoped to pay off the lien from the profits of another investment thereby enabling him to give clear title. Any question of credibility is solely for the trier of fact to resolve. *Weber* v. *Bailey*, 302 Ark. 175, 787 S.W.2d 690 (1990).

As to Mays' failure to inform Morris of the lien, Mays testified that he thought no more about the lien than on any other occasion where he had rented out an apartment and there was a lease on the building. This precludes a determination that Mays

possessed a fraudulent or dishonest intent as a matter of law. Furthermore, an attorney's failure to disclose the existence of a lien to his client, without proof of actual fraud or dishonesty, implicates only "constructive fraud."

■ We have defined constructive fraud as "*a breach of legal or equitable duty* which, irrespective of the moral guilt of the fraud feasor, the law [declares] fraudulent because of its tendency to deceive others . . . Neither actual dishonesty of purpose nor intent to deceive is an essential element." (Emphasis added.) *Davis* v. *Davis*, 291 Ark. 473, 725 S.W.2d 845 (1987) (quoting *Lane* v. *Rachel*, 239 Ark. 400, 389 S.W.2d 621 (1965)). It has been held that policy exclusions for "fraudulent acts" should not include constructive fraud or acts or omissions which are deemed fraudulent only because they constitute a breach of fiduciary obligations. *See* R. Mallen and J. Smith, *Legal Malpractice*, § 28.19 (1989). See also *Perl* v. *St. Paul Fire & Marine Ins. Co.*, 345 N.W.2d 209 (Minn. 1984) where the court held that an attorney's failure to inform his client of his business relationship with an insurance adjuster, with whom he was negotiating on the client's behalf, constituted only constructive fraud, thus making the policy's fraud exclusion inapplicable. "Since much of an attorney's practice involves fiduciary duties, to exclude such conduct from an attorney's liability policy would eviscerate the policy coverage." *Id.* at 213.

Surely Valley Forge did not intend to exclude coverage for a breach of fiduciary duty without a showing of intentional wrongdoing, which, as we stated, presents a factual issue.

## BUSINESS EXCEPTIONS

Lastly, summary judgment should not have been granted on the basis of the policy exclusion concerning an "owned business," or the exclusion concerning an attorney's activities as an officer, director, employee, or trustee of a business enterprise.

The "owned business" exclusion provides that the policy will not cover:

\* \* \* \*

B. the performance of professional services for a business enterprise not named in this policy, owned by an insured or

their spouse, a business enterprise in which an insured or their spouse is a partner, or a business enterprise which is controlled, managed or operated by an insured or their spouse.

The other business exclusion denies coverage for:

C.  a claim arising out of the insured's activities as a lawyer and:

1.  an officer, director, employee or trustee of a business enterprise not named in this policy, charitable organization, or a pension, welfare, profit-sharing, mutual or investment fund or trust. . .

unless such entity is a client of the insured and the claim relates solely to such lawyer/client relationship.

The pivotal question with regard to both of these exclusions is whether Mays was acting in the interests of the Mays-Connealy Corporation when he arranged the sale of the motel. We agree with the appellants that although the facts, on the surface, appear to fit within the language of these exclusions, the application of the exclusion depends on the real nature of the transaction. Was Mays acting on behalf of his company or was he arranging a deal for Morris as his attorney, or both?

A determination of whether Mays was acting "for" the Mays-Connealy Corporation, and whether the claim "arose out of" his connection with that company, turns on the credibility of Morris' testimony that the whole transaction would not have occurred but for Mays' professional advice in connection with the divorce, versus the credibility of Mays' testimony that he "assumed" he was representing his company in drafting the lease papers. This is a matter for a trier of fact.

We have said that exclusionary clauses in insurance policies are strictly interpreted, and all reasonable doubts are resolved in favor of the insured. *Southern Title Ins. Co. v. Oller*, 268 Ark. 300, 595 S.W.2d 681 (1980). Again, we find that factual issues remain as to Mays' acts in connection with his company and that summary judgment in favor of Valley Forge on the basis of either of these exclusions was, therefore, improper.

For the foregoing reasons, we reverse and remand for trial.

BROWN, J., not participating.