INTERSTATE FREEWAY SERVICES, INC., and Wayne E. Stowe *v.* John T. HOUSER

91-291                                                  835 S.W.2d 872

Supreme Court of Arkansas
Opinion delivered July 20, 1992
[Rehearing denied September 14, 1992.*]

*Corbin, J., not participating.

*Skokos, Coleman & Rainwater, P.A.*, by: *Jay Bequette*, for appellants.

*Hilburn, Calhoun, Harper, Pruniski & Calhoun, Ltd.*, by: *James D. Lawson*, for appellee.

JACK HOLT, JR., Chief Justice. The central issue in this case is whether the appellants, Interstate Freeway Services, Inc. (IFS), and Wayne E. Stowe, fraudulently induced the appellee, John Houser, to accept employment to open and manage their new restaurant, John's Diner, and the corresponding measure of compensatory and punitive damages.

The underlying facts show that Houser had managed a

restaurant for IFS from 1971 to 1980, at which time he voluntarily terminated his employment. Houser continued to work in the restaurant business, and, sometime in September or October of 1989, he responded to a newspaper advertisement in which Stowe had advertised for a shift manager at his Union 76 Truck Stop restaurant. However, the job had already been filled, and Houser then began working as an assistant chef at the Marlsgate Plantation near Scott, Arkansas, on October 16, 1989.

The next day Stowe contacted Houser with an offer to open and manage a new restaurant, bearing his name, John's Diner, which offer included a salary of $500.00 per week, paid vacation, hospitalization and related insurance for both Houser and his wife, and ten percent of the restaurant's gross profits. Houser accepted Stowe's offer, gave notice to Marlsgate Plantation, and, due to Stowe's expressed desire to open for business as quickly as possible, began the very next day to hire employees, to clean the restaurant facility, and to order food and supplies.

On October 31, 1989, John's Diner opened under Houser's management; apparently, business was good and patronage increased daily. On November 3, 1989, however, Houser, as well as his entire staff, was fired by Bill Landers, an agent of IFS, because of attitude and not following company policy (allegedly permitting the restaurant employees to drink coffee and tea without paying for their beverages). On November 6, 1989, Stowe installed Landers as manager and a new staff was employed to continue operating the business. The restaurant was subsequently renamed the Diner, accomplished simply by removing Houser's first name from the sign.

Houser filed a complaint in the Pulaski County Circuit Court on November 28, 1989; Stowe and IFS filed a motion to dismiss, and Houser filed an amended complaint. Stowe and IFS responded with a second motion to dismiss, which was granted in part and denied in part; the trial court left Houser's claim of fraud against Stowe and IFS intact.

After a jury trial on April 9, 1991, Houser was awarded a judgment jointly and severally against Stowe and IFS in the amount of $27,872.00 for compensatory damages and $2,787.00 for punitive damages, as well as $104.21 for statutory costs. From this award, Stowe and IFS appeal and assert three points of error,

none of which has merit, and the judgment of the trial court is affirmed as modified.

## I. PROOF OF FRAUD

The appellants initially contend that the trial court erred in denying their motion for directed verdict and motion for judgment notwithstanding the jury's verdict or for new trial and instructing the jury on fraud due to Houser's failure to prove essential elements of his claim for fraud.

■ Fraud is never presumed, but must be affirmatively proved, and the burden of proving fraud is upon the party who alleges it and relies on it. *Rees v. Craighead Inv. Co., Inc.*, 251 Ark. 336, 472 S.W.2d 92 (1971).

■■ In *Morris v. Valley Forge Ins. Co.*, 305 Ark. 25, 805 S.W.2d 948 (1991)(citing *Brookside Village Mobile Homes v. Meyers*, 301 Ark. 139, 782 S.W.2d 365 (1990)), we noted that proof of fraud requires a showing of five elements: 1) a false representation of a material fact; 2) knowledge or belief on the part of the person making the representation that the representation is false; 3) an intent to induce the other party to act or refrain from acting in reliance on the misrepresentation; 4) a justifiable reliance by the other party; and 5) resulting damages. Further, circumstantial evidence can serve as a basis for the jury to infer fraud as it can serve as a basis to infer any other fact. *Moore Ford Co. v. Smith*, 270 Ark. 340, 604 S.W.2d 943 (1980).

Houser contended at trial that, although Stowe had offered him the position of manager of the new restaurant and to have full responsibility to do what he wanted to do without outside interference, Stowe had exercised deceit in that he had really only wanted him to clean the restaurant facility and do the initial hard work of opening the restaurant with the hidden intent of installing his own workers at the restaurant after the initial start-up work had been completed. With regard to his actual authority as manager of the restaurant, Houser testified in essence as follows:

> Mr. Stowe said he was going to open a restaurant and asked if I would be interested in running it. I told him I had just gone to work. When he quoted me the salary of $500.00 a week, plus hospitalization, plus life insurance, ten percent of the profits and vacation, five days a week, off

Saturday and Sunday, eight hours a day, I took the job. This was better deal than what I had at Marlsgate or had ever had in the restaurant business. Even though I had been satisfied at Marlsgate, I quit there to go to work for Mr. Stowe because he offered me $250.00 more per week for the same hours. My position was going to be manager. My authority at the diner was that I was going to manage it. I was to have full responsibility to do what I wanted to do without outside interference. I did get outside interference from Bill Landers. He was there every day like he owned the place.

Stowe also testified, in response to the question whether Houser was going to run the restaurant, that Houser was going to "[m]anage it, right." Stowe also stated that he ". . . had Bill Landers, my general manager, down there to keep an eye on everything," and Landers ". . . came back every night and reported to me."

In response to Houser's claim, Stowe asserted that he had complied with every facet of his employment offer to Houser in that he paid Houser for the two weeks that he worked, as well as two weeks severance pay, and installed him as manager of the new restaurant. Houser was not employed long enough to receive paid vacation or insurance benefits, which were part of the promised package.

The jury was properly instructed by the trial court that "[f]raud may not be presumed. It must be proven. However, you may review all of the circumstances of a transaction including the conduct of the parties, and you may infer fraud from facts which have been proven. In other words, fraud may be proven by circumstantial evidence, where the circumstances are so clear and well connected as to clearly show fraud."

Factual questions as to whether Stowe actually intended to defraud Houser and whether Houser justifiably relied on Stowe's representations are issues within the province of the jury to decide. It is obvious that these representations were made and that Houser relied on them; based on the trial court's instruction, the jury found fraud, and we agree. Given Houser's concededly good reputation in his profession, acknowledged by both Stowe and Landers, the terms of Stowe's employment offer

as manager, Landers's apparent oversight of the restaurant start-up, the short duration of Houser's employment, and the reasons and circumstances of Houser's termination, we cannot say that Houser did not satisfy his burden of proving fraud on behalf of IFC and Stowe.

## II. COMPENSATORY DAMAGE

Next, the appellants argue that the trial court erred in denying their motion for directed verdict, motion for new trial, and motion for order of remittitur and by instructing the jury on Houser's claim for damages as his measure of damage was clearly contrary to the law of the State of Arkansas.

The trial court instructed the jury with modified AMI 2201 as follows:

> If you decide for the plaintiff on the question of liability against any party he is suing, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following two elements of damage sustained:
>
> First, the value of the plaintiff's loss of income; and
>
> Second, the value of the plaintiff's benefits lost.
>
> Whether any of these two elements of damage has been proved by the evidence is for you to determine.

The jury awarded Houser $27,872.00, apparently on the basis that Houser testified that, as of the time of trial, he would have made $39,000.00 from his salary of $500.00 per week. Using this figure as a base amount, the jury deducted $2,000.00 that he had been paid from Stowe and IFS for wages and severance pay and $11,475.00 that he had earned from another job and added $2,347.00 for the cost of insurance in determining the amount of its award.

Essentially, Stowe and IFS argue that, under the two recognized theories of recovery for fraud cases, since Houser was offered a job based on a weekly salary and he was paid for his two weeks of work plus two weeks severance pay, then his damages should be reduced to a nominal amount of $1.00.

Two measures of general damages are generally applied in actions for fraud in recognition of the underlying

elements of both tort and contract in those actions. The first measure is the benefit of the bargain measure, in which the injured party is entitled to the difference between the value of the property, business, or chattel as represented and its actual value at the time of the purchase. In essence, the injured party would receive his expectation. The second measure is the out-of-pocket measure, in which the injured party is to be made whole by being restored to the position he was in prior to the injury; this measure provides for the difference between the purchase price and the actual value of the goods received. H. Brill, *Arkansas Law of Damages*, § 35-37 (1990).

■ It has been recognized that these two theories of recovery are difficult to apply where the fraudulently induced contract is one for personal services, such as employment. *See generally* Annotated, Employment — Fraud — Damages, 24 A.L.R.3d 1388 (1969). In fraudulent inducement of employment cases, under the benefit of the bargain measure the defrauded employee receives the benefits he would have realized under the contract had the representations been true. Under the out-of-pocket measure, the focus is on compensating the injured party for the pecuniary loss sustained as a result of the fraud. *Id.* Further, the difficulty in application of these theories is increased by the fact that this is an employment-at-will case, in that there is no set length of employment.

We note with approval the approach taken in the case of *Berger* v. *Security Pacific Inf. Systems*, 795 P.2d 1380 (Colo. App. 1990), where an at-will employee who established that her employer had fraudulently concealed that the project for which she had been hired to manage might be terminated was entitled to lost wages from the time of the project's termination; although the employee's employment was terminable at will, the jury could reasonably infer from the evidence that her employment would have continued for a reasonable time had the project been as successful as represented by the employer.

In this case, Houser had previously worked for Stowe and IFS as a manager for eight years, and Stowe had been pleased with his work. All parties agree that John's Diner did good business for a new restaurant during the four days that it was open while Houser was employed as manager. The jury, therefore,

could infer that Houser would have continued work for a reasonable time when calculating his damages; however, the jury included in its award the time period after the restaurant closed to the time of trial, and we find this time period to be too speculative for inclusion in the damages award.

Accordingly, we find that a remittitur in the amount of damages from $27,872.00 to $14,347.00, to encompass only the period during which the restaurant remained open, is reasonable in these circumstances.

### III. PUNITIVE DAMAGES

Finally, the appellants claim that the trial court erred in denying their motion for directed verdict and motion for judgment notwithstanding the verdict, for new trial, and for remittitur and instructing the jury as to Houser's claim for punitive damages since he failed to meet his burden of proving that their conduct was reckless, malicious, or intentional.

In *Ray Dodge, Inc.* v. *Moore*, 251 Ark. 1036, 479 S.W.2d 518 (1972), we noted that compensation of a plaintiff is not the purpose of punitive damages but the penalty which the law fixes for conduct which is malicious, wanton, in violation of a relationship of trust or confidence, or which is done with deliberate intent to injure another. There is no fixed standard for measurement of punitive damages, and their amount lies largely within the discretion of the jury on due consideration of the attendant circumstances.

In this case, the jury's award of $2,787.00 was not excessive in light of the appellants' premeditated motivation behind the appellants' actions, the degree of calculation involved, and the extent of the appellants' disregard of Houser's rights and expectations.

### IV. MOTION FOR COSTS AND FEES FOR SUPPLEMENTARY ABSTRACT

Houser has filed a motion for costs and fees for his supplemental abstract in the amount of $1,045.00; however, the majority of the material included in his supplemental abstract has already been included in Stowe's and IFS's abstract and is, therefore, wholly unnecessary and repetitive.

We find that an award of $100.00 for costs and fees for those parts of Houser's supplemental abstract not included in Stowe's and IFS's abstract is an appropriate award in this case.

Affirmed as modified.

DUDLEY and BROWN, JJ., dissent.

CORBIN, J., not participating.

ROBERT H. DUDLEY, Justice, dissenting. The issues and the facts are exactly as stated in the majority opinion. There was substantial evidence to show that the defendants, the appellants in this court, through defendant Stowe, induced the plaintiff, appellee, to quit his job elsewhere and to accept employment with them. The defendant was to clean the interior of a building and prepare it for the opening of a restaurant, and then, after opening the restaurant, was to manage it. Defendant Stowe told the plaintiff that his salary would be $500.00 per week, that he would have paid vacations, hospitalization and other insurance, and 10% of the gross profits. The plaintiff accepted the defendants' oral offer of employment for an indefinite term. In their briefs in this court, both parties agree that the contract of employment was one of *employment-at-will,* that both parties performed the oral contract through the opening of the restaurant, that both parties performed the contract through the first four days the restaurant was in operation, but after only four days of operation, defendant Stowe discharged the plaintiff and installed someone else as manager. The jury found the defendants guilty of the tort of deceit and awarded compensatory and punitive damages. The majority opinion affirms the finding, but modifies the amount of damages. The majority opinion states that it affirms the judgment because the defendants had the "hidden intent of installing their own workers at the restaurant after the initial start-up work had been completed." I can only interpret the opinion as standing for the proposition that now, when an employer hires an *employee-at-will,* but intends to later replace him with someone else, the employer can be liable for the tort of deceit. This seems to me to be an evisceration, if not a partial overruling, of our employee-at-will doctrine.

In *Griffin* v. *Erickson,* 277 Ark. 433, 642 S.W.2d 38 (1982), dictum of the opinion states that the employment-at-will doctrine

is deeply embedded in our case law and that the doctrine expressly recognizes the right of *either party* to terminate at will even where the conditions of employment are that an employee would not be discharged except for good cause. Then, in the significant case of *Gladden* v. *Arkansas Children's Hosp.*, 292 Ark. 130, 136, 728 S.W.2d 501, 505 (1987), we re-examined our position on the employment-at-will doctrine, and wrote: "The firm rule at common law is that either party can terminate at will, and while the rule has been criticized, . . . *we are unwilling to replace it with a rule that subjects the employer to suit for wrongful discharge whenever an employee is terminated.*" [Emphasis added.] [Citation omitted.] We affirmed that position just two weeks ago. *See Mertyris* v. *P.A.M. Transp., Inc.*, 310 Ark. 132, 832 S.W.2d 823 (1992). The rationale of the doctrine is that the obligation must be mutual for a specified period of time. If the employee does not agree to work a specified length of time, the employer is not obligated to employ him for any specified length of time. If the employer does not agree to employ the employee for a specified length of time, the employee is free to leave at any time. We have created some exceptions to the doctrine, for example, if the employee is discharged "in violation of a well-established public policy of the state," *Sterling Drug, Inc.* v. *Oxford*, 294 Ark. 239, 249, 743 S.W.2d 380, 385 (1988), and "where an employer's employment manual contains an express provision stating that the employee will only be dismissed for cause and that provision is relied on by the employee." *Crain Indus., Inc.* v. *Cass*, 305 Ark. 566, 571, 810 S.W.2d 910, 913 (1991). However, none of the exceptions are applicable in this case, and it is undisputed that the plaintiff was an employee at-will. *Thus by operation of law, the contract of employment provided that the defendant-employer had the right to discharge the plaintiff-employee at any time for any reason not contrary to public policy.*

The majority opinion does not explain its reasoning in holding that the employer is liable for the tort of deceit. I can only assume that the gist of the holding is not that the discharge gave rise to the damages, but instead that the act of the employer in falsely representing that he would retain the employee for some unspecified term, when in fact he never intended to do so, was the act which the majority holds gives rise to the damages. The

discussion in the majority opinion about the measure of damages states that the majority holds that the term of employment was implied to be for a reasonable period of time, and that will normally be defined as the period from termination of employment until trial. Thus, the majority holds that the employer falsely promised to give up his lawful right to discharge the at-will employee. The holding is based only upon the facts that the employer discussed vacations, insurance, and future business expectations and later replaced the employee. In a comparable fact situation, involving the tort of outrage, we said the statement "looking forward to a continued employment or association for many more years" was a statement "expressing a hope or expectation rather than a promise." We additionally said, "Surely, most employers express hope that the newly hired employees will enjoy a long career with them, but those employers hardly intend for their sentiments to form a contract with the employee." *Harris* v. *Arkansas Book Co.*, 287 Ark. 353, 357, 700 S.W.2d 41, 43 (1985). It would seem that comparable facts should be construed in the same manner in this case.

A number of other courts have addressed the issue, including two of our neighboring states. In *Price* v. *Mercury Supply Co., Inc.*, 682 S.W.2d 924, 934 (Tenn. Ct. App. 1984), the Tennessee Court wrote:

> Upon examination of this record, we find no material fact presented by Mr. Price that would support a claim of fraud—promissory or otherwise. On the contrary, Mr. Price's own testimony defeats this claim because he repeatedly admits that the defendants honored all commitments to him except the perceived commitment for lifetime employment. *This statement, even if made, cannot provide the basis of an allegation of fraud because, at most, it created a contract terminable at the will of either party.* [Emphasis added.]

In *Deschler* v. *Brown & Williamson Tobacco Co.*, 797 F.2d 695 (8th Cir. 1986), the Eighth Circuit Court of Appeals, citing and applying Missouri law, wrote that a discharged employee had no cause of action for fraudulent misrepresentation based on an employer's alleged oral promises of lifetime employment where a written contract was unambiguous and terminable at will by

either party. There are a number of comparable holdings, see Annotation, *Employer's Misrepresentation As To Prospect, Or Duration, Of Employment As Actionable Fraud*, 24 A.L.R.3d 1412 (1969), and while some jurisdictions have ruled that misrepresentations by an employer are actionable, none of those cases discuss the fraud claim in the context of employment-at-will.

While there is no Arkansas case squarely on point, we have a number of cases that seem to be contrary, at least in spirit, to the holding of the majority opinion. In *Sterling Drug, Inc.* v. *Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988), we held that even though an employee was wrongfully discharged under one of the exceptions to the employment-at-will doctrine, the employee had no cause of action in tort for the wrongful discharge. Instead, we limited the employee to a breach of contract action. *Id.* at 249, 743 S.W.2d at 385. In *Scullin* v. *Newman*, 127 Ark. 227, 191 S.W. 922 (1917), the trial court held that an employer was guilty of fraud when it orally promised future employment to an employee in exchange for a written release from liability and then discharged the employee. We reversed, stating:

> Fraud cannot be predicated upon a promise of future employment unfilled that is not recited in the instrument which constitutes the contract of release. . . .
>
> 'This was not a false statement upon which fraud may be predicated; such fraud must be of existing facts or facts which previously existed, and cannot consist of mere promises as to future acts, although such promises are subsequently broken. . . . The representations here complained of relate solely to promises as to matters in the future.'

*Id.* at 232, 191 S.W. at 923-24 (quoting *Conoway* v. *Newman*, 91 Ark. 324, 121 S.W. 353 (1909)).

In *Harris* v. *Arkansas Book Co.*, 287 Ark. 353, 356, 700 S.W.2d 41, 43 (1985), while discussing the tort of outrage and the dismissal of an employee, we wrote: "Because of the employer's right to discharge an at-will employee, a claim of outrage by an at-will employee cannot be predicated upon the fact of the discharge alone." We quoted the same language, with approval,

in *Smith* v. *American Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 683 (1991) and in *Mertyris* v. *P.A.M. Transp., Inc.*, 310 Ark. 132, 832 S.W.2d 823 (1992). Finally, in *Victor Broadcasting Co., Inc.* v. *Mahurn*, 236 Ark. 196, 365 S.W.2d 265 (1963), a minority stockholder was fraudulently induced to sell his stock to the majority stockholder for cash and the promise of future employment by the corporation. After the minority stockholder sold his stock, and the majority stockholder had control of the corporation, the former minority stockholder was discharged. The trial court apparently found that fraud was committed, did not award damages for a fraudulent discharge, but instead awarded a fair cash value for the minority stock fraudulently obtained. The majority stockholder appealed, and we affirmed.

It is significant that the majority opinion does not cite any cases in which we have upheld an award of damages for the false representation of the duration of employment of an *employee at-will*. The case cited in the majority opinion, *Morris* v. *Valley Forge Ins. Co.*, 305 Ark. 25, 805 S.W.2d 948 (1991), deals with an attorney's alleged wrong act against his client.

As previously set out, the rationale of the employment-at-will doctrine is mutuality of obligation. Unless a contract of employment is for a specified period of time, it may be terminated at the will of either party. It is only when both parties are bound for a specified period that there is mutuality for a specified period, and the contract will be binding for that future period. The majority opinion does not discuss the need for mutuality, but the tort of deceit also obviously requires mutuality. If one party can be guilty of the tort, so can the other. Under the precedent of the majority opinion, if an employee takes a job and inquires about vacations, insurance, and future business expectations, but has a hidden intent to take a better job when it comes along, as most employees do, he too will be subject to suit for the tort of deceit and will be liable to the employer for damages for a reasonable period of time.

Under our established law, the employer in this case had the right to discharge the employee at any time, so long as it was not for a reason against public policy. There was no evidence of a representation by the employer that he would give up his right to terminate the employment-at-will. Thus, there was no deceit. To

hold, as the majority opinion does, that the facts of this case give rise to a cause of action for deceit against an employer because an employee was not retained for a reasonable time is to disembowel the employment-at-will doctrine without discussing the reasoning. I dissent.

ROBERT L. BROWN, Justice, dissenting. There was no evidence of pretextual deceit in this case. The circumstances adduced by the majority to support fraud are these:

1. Houser had a good reputation.

2. He was offered an employment package which included paid vacation and insurance benefits that he never received.

3. Another Interstate manager, Bill Landers, kept an eye of him.

4. His employment lasted two weeks.

5. He was fired for an attitude problem and for giving away tea and coffee to employees.

Where in these circumstances is the substantial proof of fraud? All the majority has done is set out events leading up to an employee termination and call it by a new name — pretextual deceit.

Fraud can be inferred from circumstantial evidence as the majority emphasizes. But that can only occur "where the circumstances are so clear and well connected as to clearly show fraud," as the jury was instructed. Our cases are also legion that fraud is never presumed but must be affirmatively proved by circumstantial or actual evidence. *See, e.g., Bradley* v. *Southern Farm Bureau Cas. Insur. Co.*, 392 F. Supp. 478 (E.D. Ark. 1975); *Berkeley Pump Co.* v. *Reed-Joseph Land Co.*, 279 Ark. 384, 653 S.W.2d 128 (1983); *Ouachita Electric Cooperative Corp.* v. *Evans-St. Clair*, 12 Ark. App. 171, 672 S.W.2d 660 (1984). That was not done in this case. By its decision the majority opens the door for frivolous litigation. Hereafter, anytime an employee is fired during the early days of employment, he or she can contend, without further proof, that the employment was a pretext and that the employer intended all along to hire only for the short term. That cannot be the law.

For a cause of action in deceit to prevail, there need be more than a theory and a conjured suspicion of conspiracy. There must be proof, either circumstantial or actual, to sustain the theory. Here, the proof was gossamer thin. We presume fraud when we adopt a theory without substantial evidence to support it. I would reverse the judgment.