Cite as 2021 Ark. 211

# SUPREME COURT OF ARKANSAS

No. CV-20-713

| | | |
|---|---|---|
| ANN JENKINS | | **Opinion Delivered:** November 12, 2021 |
| | APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CV-20-934] |
| V. | | |
| | | HONORABLE XOLLIE DUNCAN, JUDGE |
| MERCY HOSPITAL ROGERS | | |
| | APPELLEE | <u>AFFIRMED IN PART; REVERSED AND REMANDED IN PART</u>. |

**ROBIN F. WYNNE, Associate Justice**

Ann Jenkins appeals from the Benton County Circuit Court's dismissal of her employment-discrimination complaint against Mercy Hospital Rogers ("Mercy"). For reversal, Jenkins argues that (1) her fraud claim survives because Mercy misrepresented its policy against religious discrimination; (2) her wrongful-termination claim survives under either the contract or the public-policy exception to the at-will employment doctrine; and (3) her claim under the Arkansas Civil Rights Act of 1993 ("ACRA"), Ark. Code Ann. §§ 16-123-101 to -108 (Repl. 2016 & Supp. 2021), survives either because Mercy does not qualify for the religious-organization exemption or because the exemption is unconstitutional. We affirm in part and reverse and remand in part.

## I. *Background*

Jenkins began working as a physical therapist assistant at Mercy in 2012. At all relevant times, Mercy had an influenza vaccination policy requiring that all employees receive an annual influenza vaccine as a condition of employment. Mercy's vaccination policy stated that Mercy

"will grant exemptions to the annual flu vaccination for approved medical reasons or sincerely held religious beliefs." Under the vaccination policy, an employee whose exemption request is denied must be vaccinated, and an employee who is not vaccinated or granted an exemption will be terminated. Mercy also had an Equal Employment Opportunity ("EEO") policy stating in relevant part that "Mercy . . . is committed to a policy of non-discrimination on the basis of . . . religion . . . . In our commitment to discrimination-free services we exceed the requirements of Title VI & Title VII of the Civil Rights Act of 1964." In addition, Mercy displayed an "EEO is the Law" poster, which stated in relevant part that "Title VII of the Civil Rights Act of 1964, as amended, protects applicants and employees from discrimination . . . on the basis of . . . religion." Mercy's website also stated that "Mercy is an equal opportunity employer . . . . We do not discriminate based upon . . . religion."

In the fall of 2018, Jenkins requested an exemption to the annual influenza vaccination requirement. She stated that receiving the vaccine would violate her religious beliefs, based on her interpretation of scriptures including Leviticus and Deuteronomy. Mercy denied her exemption request. Jenkins appealed pursuant to the vaccination policy, and Mercy again denied her request. Mercy terminated Jenkins after she failed to get vaccinated.

After receiving a right-to-sue letter from the Equal Employment Opportunity Commission, Jenkins sued Mercy in federal court, alleging that Mercy terminated her in violation of federal and state law. The federal court dismissed Jenkins's federal Title VII claim with prejudice, determining that Mercy is a religious corporation exempt from Title VII liability for religious discrimination in employment. *Jenkins v. Mercy Hosp. Rogers*, No. 5:19-cv-05221, 2020 WL 1271371, at * 2 (W.D. Ark. Mar. 17, 2020). The federal court declined to exercise jurisdiction over Jenkins's state-law claims and dismissed these claims without prejudice. *Id.*

2

Jenkins then filed this action in the Benton County Circuit Court, alleging fraud, violation of ACRA, wrongful termination, and estoppel. Jenkins amended her complaint three times. In her original and first amended complaints, Jenkins alleged that Mercy is a religious organization. In her second and third amended complaints, however, she alleged that Mercy, while an affiliate of the Catholic Church, is not a religious organization. Jenkins also dropped her estoppel claim and added declaratory-judgment claims alleging that ACRA's exemption for religious organizations is unconstitutional under both the federal and state constitutions. Mercy moved to dismiss, and the circuit court dismissed Jenkins's claims with prejudice. Jenkins timely appealed.

## II. *Standard of Review*

In reviewing a circuit court's decision on a motion to dismiss under Arkansas Rule of Civil Procedure 12(b)(6), this court treats the facts alleged in the complaint as true and views them in the light most favorable to the plaintiff. *Parnell v. FanDuel, Inc.*, 2019 Ark. 412, at 2, 591 S.W.3d 315, 317. In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.* at 3, 591 S.W.3d at 318. We look only to the allegations in the complaint and not to matters outside the complaint. *Henson v. Cradduck*, 2020 Ark. 24, at 4, 593 S.W.3d 10, 14. We treat only the facts alleged in the complaint as true but not a plaintiff's theories, speculation, or statutory interpretation. *Id.* The standard of review for the granting of a motion to dismiss is whether the circuit court abused its discretion. *Id.* We consider questions of law de novo. *Brown v. Towell*, 2021 Ark. 60, at 6, 619 S.W.3d 17, 20.

III. *Fraud*

Jenkins argues that her fraud claim survives because Mercy made false representations about its policy against religious discrimination. In her complaint, Jenkins alleged that statements in Mercy's EEO policy, influenza vaccination policy, EEO poster, and on its website—that Mercy "is committed to a policy of non-discrimination," "exceed[s] the requirements of Title VII," and "is an equal opportunity employer"—falsely represented that Mercy does not discriminate. She contends that Mercy fraudulently induced her to continue her employment at the hospital by representing that it does not discriminate and that she justifiably relied on those representations.

To prove fraud, a plaintiff must show that (1) the defendant made a false representation of material fact; (2) the defendant knew that the representation was false or that there was insufficient evidence upon which to make the representation; (3) the defendant intended to induce action or inaction by the plaintiff in reliance upon the representation; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered damage as a result of the false representation. *Muccio v. Hunt*, 2016 Ark. 178, at 4–5, 490 S.W.3d 310, 312–13.

Projections of future events or conduct cannot support a fraud claim as a matter of law. *Se. Distrib. Co. v. Miller Brewing Co.*, 366 Ark. 560, 575, 237 S.W.3d 63, 74 (2006); *Anthony v. First Nat'l Bank of Magnolia*, 244 Ark. 1015, 1028, 431 S.W.2d 267, 274 (1968) ("Representations that are promissory in nature or of facts that will exist in the future, though false, do not support an action for fraud."). Rather, the misrepresentation "must relate to a past event, or a present circumstance, but not a future event." *P.A.M. Transport, Inc., v. Arkansas Blue Cross & Blue Shield*, 315 Ark. 234, 240, 868 S.W.2d 33, 36 (1993). *See Hobson v. Entergy Arkansas, Inc.*, 2014 Ark. App. 101, at 10, 432 S.W.3d 117, 124 (employer's promises to

employee that it would buy the employee's house if he relocated were promises of future events); *Welsher v. Mercy Health Sys. of Nw. Arkansas, Inc.*, 2012 Ark. App. 394, at 4 (hospital's statements to physician that it would engage in certain activities to expand cardiology services were "expressions of aspirations and goals," not statements of material fact). We have, however, recognized an exception to the general rule when the person making the representation knows it to be false at the time it is made. *Delta Sch. of Commerce, Inc. v. Wood*, 298 Ark. 195, 200, 766 S.W.2d 424, 427 (1989).

Jenkins argues that Mercy fraudulently induced her to remain employed at the hospital by knowingly representing—falsely, she claims—that it does not discriminate. She relies on *Interstate Freeway Services, Inc. v. Houser*, 310 Ark. 302, 835 S.W.2d 872 (1992). In *Houser*, this court concluded that statements made by an employer to Houser that Houser would manage a restaurant after opening it were sufficient to show fraud. 310 Ark. at 306–08, 835 S.W.2d at 874. At the time he made those statements, the employer intended to replace Houser after the restaurant opened and did so within four days. *Id*. at 305–06, 835 S.W.2d at 873–74. By contrast, in this case, Mercy's statements were general aspirational statements about its commitment to nondiscrimination. Mercy could not have known that when it hired Jenkins, it would not approve her exemption request six years later.

Jenkins has failed to plead that Mercy made any false representations of material fact sufficient to sustain a fraud action. The statements in Mercy's policies that it is committed to a policy of nondiscrimination and that it is an equal opportunity employer do not relate to past events or present circumstances. Instead, they are projections that Mercy will not engage in religious discrimination in the future. Because these statements are aspirational expressions of

5

Mercy's dedication to nondiscrimination in the workplace and not representations of material fact, they cannot support a fraud claim.

Nor has Jenkins alleged facts to establish that she justifiably relied on the statements made by Mercy. When an employment contract is silent as to its duration, either party may terminate the relationship at will and without cause. *Cottrell v. Cottrell*, 332 Ark. 352, 354, 965 S.W.2d 129, 130 (1998). This court has recognized an exception to the at-will doctrine "where there is an agreement that the employment is for a specified time, in which case firing may be only for cause, or where an employer's employment manual contains an express provision stating that the employee will only be dismissed for cause and that provision is relied on by the employee." *Crain Indus., Inc. v. Cass*, 305 Ark. 566, 571, 810 S.W.2d 910, 913 (1991). Jenkins was an at-will employee. Jenkins did not allege she had a contract to be employed for a specified time, nor did she allege Mercy had an express provision in its employee manual stating that she would only be dismissed for cause. Mercy did not guarantee that it would approve Jenkins's request for a religious exemption to the influenza vaccination policy. The vaccination policy stated that an employee whose exemption request is denied must be vaccinated and that employees who are not vaccinated or granted an exemption will be terminated. Given her status as an at-will employee, Jenkins's alleged reliance on Mercy's representations of its nondiscrimination policy was not reasonable. Therefore, we affirm the circuit court's dismissal of Jenkins's fraud claim.

IV. *Wrongful Termination*

Jenkins argues that her wrongful-termination claim survives under either the contract or public-policy exception to the at-will doctrine. She contends that Mercy incurred a contractual obligation not to discriminate by stating in its EEO policy, vaccination policy, and EEO poster

6

that it would not discriminate. She also argues that Mercy terminated her in violation of Arkansas's public policy against fraud and theft of services.

As stated above, when an employment contract is silent as to its duration, either party may terminate the relationship at will and without cause. *Cottrell*, 332 Ark. at 354, 965 S.W.2d at 130. We have recognized an exception to the at-will doctrine when an employer's employment manual contains an express provision stating that the employee will only be dismissed for cause and that provision is relied on by the employee. *Crain*, 305 Ark. at 571, 810 S.W.2d at 913; *Gladden v. Arkansas Children's Hosp.*, 292 Ark. 130, 136, 728 S.W.2d 501, 505 (1987). Under this exception, "when an employer makes definite statements about what its conduct will be, an employee has a contractual right to expect the employer to perform as promised." *Crain*, 305 Ark. at 574, 810 S.W.2d at 915. In *Crain*, we determined that a statement in an employment handbook that "[i]n the event it should become necessary to reduce the number of employees in the work force, employees will be laid off on a seniority basis by department" was sufficient to establish a wrongful-termination claim. 305 Ark. at 568, 810 S.W.2d at 911. By contrast, in *Smith v. American Greetings Corp.*, 304 Ark. 596, 601, 804 S.W.2d 683, 686 (1991), we concluded that a statement in an employment manual that "[w]e believe in working and thinking and planning to provide a stable and growing business, to give such service to our customers that we may provide maximum job security for our employees" was not an express provision giving rise to a wrongful-termination claim.

Nothing in the EEO policy, vaccination policy, or EEO poster cited by Jenkins in her complaint creates a contractual promise of employment. None of Mercy's statements describing its general commitment to nondiscrimination is an express provision stating that an employee will only be dismissed for cause. Mercy did not guarantee in any of its policy statements that it

would approve Jenkins's request for an exemption to the annual influenza vaccination requirement. And the vaccination policy provided that an employee whose exemption request is denied must be vaccinated and that Mercy will terminate employees who do not receive either the vaccine or an exemption. Because Jenkins does not identify an express provision stating that she would only be discharged for cause, she failed to sufficiently state a contract exception to the at-will doctrine.

We have also recognized a limited exception to the at-will doctrine when an employee is terminated in violation of a well-established public policy of the state. *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 249, 743 S.W.2d 380, 385 (1988). Such public policy must be outlined in our statutes. *Island v. Buena Vista Resort*, 352 Ark. 548, 562, 103 S.W.3d 671, 679 (2003). In *Sterling Drug*, the public-policy exception applied when an employee was discharged for reporting a violation of federal law because a state statute prohibited retaliation against informants. 294 Ark. at 250, 743 S.W.2d at 386. And in *Island*, the exception applied when an employee was discharged for rejecting a solicitation to engage in prostitution, which is a crime under state statute. 352 Ark. at 563–64, 103 S.W.3d at 679–80. In *Palmer v. Arkansas Council on Economic Education*, 344 Ark. 461, 472, 40 S.W.3d 784, 790 (2001), however, the exception did not apply when an employee was discharged after objecting to the commingling of state and private funds because no state statute prohibited an entity from commingling funds.

Jenkins does not identify a specific well-established public policy prohibiting Mercy from discharging her for failing to receive an annual influenza vaccine. In her complaint, Jenkins alleged that the public policy of the state is to discourage fraud, but she did not allege that Mercy violated a specific statutory provision. Such a general allegation is not adequate to state a public-policy exception to the at-will doctrine. Jenkins also alleged that Mercy violated Arkansas Code

8

Annotated section 5-36-104 (Repl. 2013), which prohibits theft of services. She argues that Mercy obtained the value of her services under the false pretense that it would not discriminate against her, but she did not allege that Mercy failed to pay her for her services. This statute simply does not apply. Because Jenkins failed to state an exception to the at-will doctrine, we affirm the circuit court's dismissal of her wrongful-termination claim.

## V. *ACRA*

Jenkins argues that she stated a claim under ACRA because the religious-organization exemption does not apply to Mercy. ACRA prohibits employment discrimination on the basis of religion, among other grounds. Ark. Code Ann. § 16-123-107. But this prohibition does not apply "with respect to employment by a religious corporation, association, society, or other religious entity." Ark. Code Ann. § 16-123-103(a). In her complaint in federal court and in her first two complaints in this action, Jenkins alleged that Mercy is a religious organization. But in her third and fourth complaints in this action, she alleged that Mercy, while an affiliate of the Catholic Church, is a secular—not religious—organization, and therefore not entitled to the exemption in section 16-123-103(a).

In dismissing Jenkins's ACRA claim, the circuit court found that Jenkins was estopped from alleging that Mercy is not a religious organization. Judicial estoppel prohibits a party from manipulating the courts through inconsistent positions to gain an advantage. *Dupwe v. Wallace*, 355 Ark. 521, 531, 140 S.W.3d 464, 470 (2004). For judicial estoppel to apply, four elements must be present: (1) a party must assume a position clearly inconsistent with a position taken in an earlier case, or with a position taken in the same case; (2) a party must assume the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage; (3) a party must have successfully maintained the position in an earlier proceeding such that the court

9

relied upon the position taken; and (4) the integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken. *Id.* at 525–26, 140 S.W.3d at 467. Judicial estoppel is applied to "knowing misrepresentation to or even fraud on the court" and should be imposed only "to avoid a miscarriage of justice." *Id.* at 535, 140 S.W.3d at 472–73.

Jenkins argues that judicial estoppel does not bar her allegation that Mercy is not a religious organization because not all elements of the doctrine are present. We agree. Jenkins did take inconsistent positions on the issue of whether Mercy is a religious organization. But there is no indication that Jenkins intended to manipulate the judicial process to gain an unfair advantage or that the inconsistent positions impaired or injured the integrity of the judicial process. The circuit court made no findings on these elements, nor did Mercy address them.

Nor does the doctrine against inconsistent positions, which this court has explained is "much broader than judicial estoppel," apply here. *Dupwe*, 355 Ark. at 531, 140 S.W.3d at 470. This court has repeatedly stated that a litigant is not permitted to assume wholly inconsistent positions on the same issue in the same case. *MacSteel Div. of Quanex v. Arkansas Oklahoma Gas Corp.*, 363 Ark. 22, 36, 210 S.W.3d 878, 886 (2005) (citing *Int'l Harvester Co. v. Burks Motors, Inc.*, 252 Ark. 816, 481 S.W.2d 351 (1972), and *Rudolph v. Kelly*, 144 Ark. 296, 222 S.W. 42 (1920)). However, the doctrine against inconsistent positions should not be applied to prohibit a plaintiff from amending her complaint under Arkansas Rule of Civil Procedure 15, particularly when there is no finding that the plaintiff assumed inconsistent positions with the intent to gain an unfair advantage. Therefore, we conclude that the circuit court erred in finding that Jenkins is estopped from alleging that Mercy is not a religious organization.

Because Jenkins is not estopped from alleging that Mercy is not a religious organization, we must consider whether Mercy is a religious organization subject to the ACRA exemption. ACRA does not define what constitutes a "religious corporation, association, society, or other religious entity," and this court has not interpreted this provision. As this court has not examined the scope of this exemption, we look for guidance to decisions construing the Title VII religious-organization exemption.[1] In deciding whether an entity is a religious organization entitled to the Title VII exemption, courts weigh "[a]ll significant religious and secular characteristics" "to determine whether the corporation's purpose and character are primarily religious." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 226 (3d Cir. 2007) (quoting *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 618 (9th Cir. 1988)); *see also Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 624 (6th Cir. 2000) ("[T]he court must look at all the facts to decide whether the [entity] is a religious corporation or educational institution.").

It is premature for this court to decide whether Mercy is a religious organization entitled to the ACRA exemption. At the motion-to-dismiss stage, there is simply no evidence in the record about Mercy's religious and secular characteristics. In determining that Mercy was entitled to the exemption, the circuit court did not make any findings of fact as to Mercy's status as a religious organization. Instead, the circuit court concluded that "[s]ince Jenkins is estopped from arguing Mercy is not a religious organization, Mercy falls within the religious exemption in Ark. Code Ann. § 16-123-103(a)." Mercy did not argue to the circuit court that

---

[1]The language in the Title VII exemption is slightly different from the language in the ACRA exemption. Title VII exempts "a religious corporation, association, educational institution, or society." 42 U.S.C. § 2000e-1(a). ACRA exempts "a religious corporation, association, society, or other religious entity." Ark. Code Ann. § 16-123-103(a).

it is a religious organization on the merits either, instead arguing that Jenkins should be prevented from taking inconsistent positions on the issue.

Mercy now contends that Jenkins's allegation that Mercy is "an affiliate of the Catholic Church" establishes that it is a religious organization entitled to the ACRA exemption. Mercy points out that courts routinely have found that Catholic hospitals qualified for religious-organization exemptions under federal and state law, citing *Boydston v. Mercy Hosp. Ardmore, Inc.*, No. CIV-18-444 G, 2020 WL 1448112 (W.D. Okla. Mar. 25, 2020); *Young v. St. John's Mercy Health Sys.*, No. 4:10CV824 TIA, 2011 WL 9155 (E.D. Mo. Jan. 3, 2011); and *Saeemodarae v. Mercy Health Servs.*, 456 F. Supp. 2d 1021 (N.D. Iowa 2006). However, these cases were decided on summary judgment after the review of evidence, not on the pleadings alone.

At this stage, given the lack of factual development in the circuit court on the issue, this court cannot determine whether Mercy is a religious organization entitled to the ACRA religious-organization exemption. We do not find facts. *See Ward v. Williams*, 354 Ark. 168, 177, 118 S.W.3d 513, 518 (2003) ("It is . . . radiantly clear that appellate courts do not make findings of fact . . . ."). Accordingly, we reverse the circuit court's finding that Mercy is entitled to the religious-organization exemption in section 16-123-103(a) and its dismissal of Jenkins's ACRA claim and remand for further proceedings consistent with this opinion.

We need not consider Jenkins's alternative argument that Mercy waived its religious-organization exemption at this time. Likewise, we do not reach Jenkins's declaratory-judgment claims that section 16-123-103(a) violates the federal and state constitutions because these claims turn on Mercy's status as a religious organization.

## VI. *Conclusion*

We affirm the circuit court's dismissal of Jenkins's fraud and wrongful-termination claims, reverse the circuit court's dismissal of Jenkins's ACRA claim, and remand for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

*Kezhaya Law PLC*, by: *Matthew A. Kezhaya*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Michelle M. Kaemmerling* and *Gary D. Marts, Jr.*, for appellee.