Cite as 2022 Ark. App. 401

# ARKANSAS COURT OF APPEALS

DIVISIONS II & III
No. CV-21-417

| | |
|---|---|
| | **Opinion Delivered** October 5, 2022 |
| REBECCA NICHOLS<br><br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION [NO. 60CV-21-1321] |
| V. | HONORABLE WENDELL GRIFFIN, JUDGE |
| JAMES SWINDOLL AND CHUCK GIBSON<br><br>APPELLEES | DISSENTING OPINION ON GRANT OF PETITION FOR REHEARING |

**KENNETH S. HIXSON, Judge**

I concur with Chief Judge Harrison's conclusion that an attorney's duty to disclose his[1] malpractice and a client's independent duty to investigate the accuracy of his attorney's assurances needs to be revisited. These two concepts have a twisted and intertwined history that has led us to the predicament we face in the case at bar. Unknown to the client[2] and through no fault of the client, the client's attorneys simply allowed a statute of limitations to expire and yet, without explanation, continued to file pleadings for two more years. As a

---

[1]This opinion uses the masculine pronoun "his" throughout instead of using "his or her" or "his/her."

[2]Appellant, Rebecca Nichols, is sometimes referred to herein as simply "the client."

result of the client's unquestioned lack of knowledge that her lawsuit was dead beyond resuscitation and the continued filing of these ineffectual pleadings, the client failed to timely file her lawsuit for attorney malpractice within the general three-year statute of limitations. The circuit court granted an Arkansas Rule of Civil Procedure 12(b)(6) motion to dismiss, finding that the statute of limitations for attorney malpractice had expired, and this court has affirmed the dismissal in the majority opinion.

The majority opinion accurately sets forth the general rule regarding the three-year statute of limitations for attorney malpractice and further that Arkansas follows the "occurrence" rule. However, in the case at bar, the client alleged and argued that her attorneys fraudulently concealed their collective malpractice and that their fraudulent concealment tolled the statute of limitations. Citing *Hutcherson v. Rutledge*, 2017 Ark. 359, 533 S.W.3d 77, the majority also accurately explains that "[t]he statute is tolled only when the ignorance [of the malpractice] is produced by affirmative and fraudulent acts of concealment. . . . Therefore, to rebut a limitations defense, a plaintiff must describe specific fraudulent acts committed for the purpose of concealing a cause of action." *Nichols v. Swindoll*, 2022 Ark. App. 233, at 5.

Below is an excerpt from the circuit court's order of dismissal.

7. There are no facts contained in the Plaintiff's Complaint or Amended Complaint sufficient to toll the running of the statute of limitation based on fraudulent concealment. There are no facts stated showing the elements of fraud, and there are no facts stated showing the alleged fraud was furtively planned and secretly executed.

While this is elementary, for purposes of a Rule 12(b)(6) motion to dismiss, we treat only the facts alleged in a complaint as true but not a plaintiff's theories, speculation, or statutory interpretation. *Jenkins v. Mercy Hosp. Rogers*, 2021 Ark. 211, 633 S.W.3d 758. The majority opinion concludes, "The allegations made in Nichols's complaint do not describe any *overt* act to *hide* information from Nichols or any fraudulent concealment of the alleged malpractice. Instead, the allegations make sweeping conclusions about what Nichols believed her attorneys' *intentions* were as they proceeded with litigation in the underlying case." *Nichols*, 2022 Ark. App. 233, at 6 (emphases added). Note the three italicized words. The majority relies on the client's description of the lack of *overt* conduct, the lack of *hidden* information, and the lack of evidence of the attorneys' *intentions*. That should raise red flags leading one to inquire: How does a client determine whether the attorneys' concealment was *overt* or *covert* without the benefit of discovery? Are we suggesting that fraudulent concealment must be *overt* to be actionable? That is an oxymoron in itself. Fraudulent concealment by its very nature and definition is covert. Further, how does a client determine that information was *hidden* from her by her attorney without the benefit of discovery? Finally, how does a client ever determine the *intent* of her attorney's concealment without the benefit of discovery? *Intent* is, by its very nature and definition, subjective.

Recall our standard of review in these cases. In testing the sufficiency of the complaint on a motion to dismiss, all *reasonable inferences* must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Jenkins, supra.* Even in criminal cases, our supreme court has often stated that a defendant's intent or state of mind is seldom

capable of proof by direct evidence and must usually be inferred from the circumstances. *Wright v. State*, 2022 Ark. 103, 644 S.W.3d 236. Moreover, our supreme court has explained that because intent cannot be proved by direct evidence, the jurors can draw upon their common knowledge and experience to infer it from the circumstances. *Id.* The only way for a client to gather indirect evidence (or direct evidence) and to shed discriminating light on overt or covert concealment, hidden information, or the subjective intent of her attorneys is to conduct meaningful discovery. However, because the circuit court granted the attorneys' Rule 12(b)(6) motion to dismiss, the client's ability to participate in meaningful discovery was foreclosed.

A cursory review of the seventy-five-paragraph amended complaint reveals that the client alleged sufficient facts to survive a Rule 12(b)(6) motion to dismiss under our standard of review. Some excerpts from the amended complaint are set forth below.

> 42. Defendants maliciously, willfully, and purposefully attempted to keep Rebecca from knowing she could no longer successfully litigate against the John Doe defendants in order to preclude her from suing them for malpractice on or before November 23, 2020. Defendants willfully and maliciously and purposefully committed fraud and deceit by not informing *her* that she could no longer successfully litigate against the John Does defendants as of March 22, 2018.
>
> . . . .
>
> 58. After March 13, 2020, Defendant Swindoll informed Rebecca that he and Defendant Gibson had committed malpractice be failing to serve her complaint along with the summons of Precoat Metals Corp.; however, Defendant Swindoll assured Rebecca there was still a possibility the judge would excuse the malpractice and allow her to continue with the lawsuit because they had technically served Precoat Metals Corp. with notice of the lawsuit. Rebecca did not know or should have known acting with reasonable diligence that Defendants had committed malpractice until after

4

March 13, 2020, or that they could have been fraudulently hiding their malpractice from her.

(Emphasis added.) In paragraphs 59–61, the amended complaint sets forth the details surrounding the attorneys' failure to serve the defendants timely. Thereafter, the amended complaint alleges the following:

> 63. The above material acts of malicious, willful and purposeful negligence and breach of fiduciary duty and material omissions were so secretly planned and executed by the Defendants as to keep Rebecca's claim for malpractice against the Defendant's hidden from her.
>
> . . . .
>
> 69. . . .
>
> c. [The defendants negligently] purposely and fraudulently and maliciously on March 22, 2018, and afterwards failed to advise Rebecca that by them failing to request an extension on or before March 22, 2018, to serve the John Doe defendants, Rebecca's further litigation efforts were useless; had the Defendants acted with a reasonable degree of care they would have immediately after March 22, 2018, informed Rebecca of their malpractice to put her on notice she needed to sue them.
>
> . . . .
>
> e. [The defendants negligently] purposefully and fraudulently and maliciously continued to fruitlessly litigate Rebecca's lawsuit against the John Doe defendants after March 22, 2018, in order to hide their malpractice from Rebecca long enough so she would be barred by the three-year statute of limitations from suing them[.]

These allegations are sufficient, in my opinion, to withstand a Rule 12(b)(6) motion to dismiss. When all reasonable inferences are resolved in favor of the complaint, and the pleadings are liberally construed, appellant did allege specific facts from which a fact-finder could infer that her attorneys fraudulently concealed their collective malpractice and that their fraudulent concealment tolled the statute of limitations. I would reverse the granting

5

of the Rule 12(b)(6) motion to dismiss and the order dismissing the case with prejudice and remand to the circuit court.

I turn now to my earlier statement that an attorney's duty to disclose his malpractice and a client's independent duty to investigate the accuracy of his attorney's assurances needs to be revisited. Chief Judge Harrison's dissent thoroughly sets forth the recent evolution of these concepts, and it need not be repeated herein.

The majority opinion makes two statements that are pertinent to the attorney's duty to disclose vis-à-vis the client's duty to investigate. First, it states, "Nichols made the conclusory allegations that her attorneys were acting with intent to drag out pointless litigation in the underlying case in the hopes that her right to sue them for legal malpractice would expire before she figured out what happened." *Nichols*, 2022 Ark. App. 233, at 3. The majority opinion also states, "[T]he circuit court remarked that nowhere in the complaint could it find '*when* the allegedly fraudulent hiding of their malpractice occurred.'" *Id.* (emphasis added).

The majority relies, in part, on two cases: *Delanno, Inc. v. Peace*, 366 Ark. 542, 237 S.W.3d 81 (2006). and *Rice v. Ragsdale*, 104 Ark. App. 364, 292 S.W.3d 856 (2009). I write separately to consider, or reconsider, the appropriate scope of a client's duty to investigate the assurances of his own attorney. This is important because it can affect every attorney-client relationship. At first blush, it appears that *Delanno* and *Rice* stand for the proposition that a client must second-guess his attorney's advice and assurances, and if he fails to investigate that advice and the assurances, the client has not preserved his future right to

6

assert a claim for attorney malpractice.  However, the holdings in *Delanno* and *Rice* are not that broad and should be isolated and distinguished.

In *Delanno, supra*, an attorney-malpractice case, the circuit court dismissed the claim as time-barred.  The client had received independent information from a reliable source (the State of Arkansas Department of Finance and Administration) that his attorney's advice was incorrect.  The *Delanno* court stated the following:

> In the instant case, attorney Peace made a representation to Delanno that conflicted with the information that Delanno had received from the State; at that point, Delanno was on notice that either his attorney or the State was incorrect, but he made no effort to contact the State to investigate the situation any further.  As stated above, if a plaintiff, by the exercise of reasonable diligence, might have detected the fraud, he is presumed to have had reasonable knowledge of it.

*Delanno*, 366 Ark. at 548, 237 S.W.3d at 86.  So, it is clear from *Delanno* that the client was "put on notice" that he should investigate the accuracy of his attorney's assurances *only after* he received reliable conflicting information from the State of Arkansas.

*Rice, supra*, was also an attorney-malpractice case.  The circuit court dismissed the plaintiff's malpractice complaint as time-barred.  The circuit court's order provided the following in pertinent part: "Plaintiffs had an independent duty to investigate the accuracy of Defendants' assurance, and that their failure to do so bars their claim that the three-year statute of limitations was tolled by Defendants' alleged fraudulent concealment."  *Rice*, 104 Ark. App. at 367, 292 S.W.3d at 860.  In affirming the dismissal, the *Rice* court quoted language found in *Delanno*, which stated, "We are unwilling to say that the fiduciary duty owed by an attorney to his client eliminates the client's duty to exercise reasonable diligence

7

in analyzing the accuracy of the attorney's statements. Clients cannot be absolved of all responsibility for testing the veracity of statements made by their lawyers." *Rice*, 104 Ark. App. at 374, 292 S.W.3d at 865 (quoting *Delanno*, 366 Ark. at 548, 237 S.W.3d at 86). The *Rice* court then stated that the clients received information from an authoritative source that contradicted the assurance of counsel and that appellants had the independent duty to reconcile the contradiction.[3] *Rice*, 104 Ark. App. at 375, 292 S.W.3d at 865.

So, the holdings of *Delanno* and *Rice* are narrower than at first blush. Both *Delanno* and *Rice* actually stand for the proposition that if a client receives reliable information from an authoritative source that contradicts his attorney's assurance, a client may have the duty to reconcile the contradiction and investigate the assurances of his own counsel.[4]

In the case at bar, the circuit court dismissed appellant's complaint with prejudice after it granted a Rule 12(b)(6) motion. We review a circuit court's decision on a motion to dismiss a complaint by treating the facts alleged in the complaint as true and by viewing them in the light most favorable to the plaintiff. *Jenkins, supra.* A review of the record reveals that the client did not receive any contradictory reliable information from a third party, and her

---

[3]A close reading of *Rice* reveals that the opinion does not identify the authoritative source that contradicted the assurance of counsel. We can only presume the record contained such evidence.

[4]Even this narrower view of *Delanno* and *Rice* gives pause and is perhaps why, in my opinion, the whole concept of an attorney's duty to disclose his malpractice vis-à-vis a client's independent duty to investigate the accuracy of his attorney's assurances needs to be revisited.

8

attorneys do not even make that allegation.   Since there was no contradictory reliable information in the record, the client was not "put on notice" to investigate her own attorneys' assurance; therefore, *Delanno* and *Rice* have limited application herein.

I would reverse the granting of the Rule 12(b)(6) motion to dismiss and reverse the order dismissing the case with prejudice and remand to the circuit court.[5]  Having said this, I express no opinion on the merits of the alleged attorney-malpractice claims.

---

[5] Contrary to statements made in the majority supplemental opinion, the issues addressed in this dissent were appropriately and timely raised below.